OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Wisintainer et al., Appellants v. Elcen Power Strut Company; JDB Engineering, Inc. et al, Appellees.
[Cite as Wisintainer v. Elcen Power Strut Co. (1993), -- Ohio St. 3d ---.]
Civil procedure -- For purposes of Civ.R. 54(B) certification, trial judge makes what is essentially a factual determination whether an interlocutory appeal is consistent with the interests of sound judicial administration -- Trial court's certification determination of "no just reason for delay" must stand, when.

1. For purposes of Civ. R. 54(B) certification, in deciding that there is no just reason for delay, the trial judge makes what is essentially a factual determination -- whether an interlocutory appeal is consistent with the interests of sound judicial administration.

2. Where the record indicates that the interests of sound judicial administration could be served by a finding of "no just reason for delay," the trial court's certification determination must stand.

(No. 92-101 -- Submitted February 16, 1993 -- Decided September 15, 1993.)

Appeal from the Court of Appeals for Guernsey County, No. 91-CA-32.

Plaintiff-appellant Larry E. Wisintainer was employed by defendant Soehnlen Piping Company, Inc.("Soehnlen") as a pipefitter. On August 26, 1987, while working on a construction site in Cambridge, Ohio, appellant sustained serious head and facial injuries as a result of being struck by a length of pipe.

The accident occurred during the construction of a liquid detergent manufacturing and bottling plant owned by Colgate-Palmolive Company ("Colgate"). Colgate entered into an agreement with Graham Container Corporation ("Graham") to design, arrange for the installation of, and operate the automated processes in Colgate's plant. Graham contracted with Sverdrup Corporation ("Sverdrup") to act as the construction manager on the project. Sverdrup, in turn, subcontracted the

various work to, among others, Soehnlen. Soehnlen supplied all materials and labor needed to install the mechanical pipe work required to convey air and water to Graham's process equipment. The specifications and technical drawings used by Soehnlen were prepared by JDB Engineering, Inc. ("JDB"), one of Graham's subcontractors. Grinnell Corporation ("Grinnell") manufactured pipe clamps of the kind used by Soehnlen to suspend the pipe which fell on appellant. Famous Supply Company ("Famous") supplied those clamps to Soehnlen.

By the time appellants filed their second amended complaint on August 17, 1989, all of the above parties had been named as defendants. Defendants also filed cross-claims amongst themselves.

Appellants' claim against Colgate was dismissed with prejudice on January 31, 1990. Between December 19, 1989 and October 19, 1990, all remaining defendants filed motions for summary judgment. At the time the motions for summary judgment were filed, the cross-claims and third-party claims remained pending.

In a June 24, 1991 entry, the trial court granted the motions for summary judgment of Grinnell, Famous and JDB, and denied those of Graham, Sverdrup and Soehnlen. On August 12, 1991, appellants petitioned the court for a nunc pro tunc judgment entry reflecting that there was "no just reason for delay" as to the order granting the summary judgments. On September 3, 1991, the court complied, ordering that "[f]or good cause shown, and in accordance with Civ. R. 54(B), the Court expressly finds that there is no just reason for delay."

Appellants sought immediate review before the Court of Appeals for Guernsey County. At the time the notice of appeal was filed, appellants' claims against Graham and Sverdrup remained pending. In addition, the cross-claim seeking indemnification and contribution filed by Sverdrup against Grinnell was pending as well as the cross-claims filed by Graham against JDB and Sverdrup.

On November 4, 1991, the appeal filed against Famous Supply was dismissed. On November 18, 1991, the Guernsey County Court of Appeals dismissed appellants' appeal against JDB and Grinnell for lack of jurisdiction, expressly finding, "[n]o final, appealable order."

This cause is now before this court pursuant to the allowance of a motion to certify the record.

The Okey Law Firm, L.P.A., and Steven P. Okey, for appellants.

Buckingham, Doolittle & Burroughs, David T. Moss and Douglas C. Bond, for appellee JDB Engineering, Inc.

Arter & Hadden, William A. Adams and Robert R. Dunn, for appellee Grinnell Corporation.

Pfeifer, J. An appellate court's review of a trial court's grant of certification should be a two-step process. First, the focus of the appellate court's review should be on whether the order appealed is "final" as defined by R.C. 2505.02. The reviewing court should concentrate on answering that predominantly legal question of whether the order sought to be appealed affects a substantial right and whether it in

effect determines an action and prevents a judgment.  It is in this first step of the review process that the court of appeals plays its most important role.

Second, the appellate court should review the trial court's determination, required by Civ. R. 54(B), that "there is no just reason for delay."  As this court has held in the past, the phrase "no just reason for delay" is not a mystical incantation which transforms a nonfinal order into a final appealable order. Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64.  Such language can, however, through Civ. R. 54(B), transform a final order into a final appealable order.

In deciding that there is no just reason for delay, the trial judge makes what is essentially a factual determination -- whether an interlocutory appeal is consistent with the interests of sound judicial administration, i.e., whether it leads to judicial economy.  Trial judges are granted the discretion to make such a determination because they stand in an unmatched position to determine whether an appeal of a final order dealing with fewer than all of the parties in a multiparty case is most efficiently heard prior to trial on the merits.  The trial court can best determine how the court's and the parties' resources may be utilized most effectively .  The trial court is most capable of ascertaining whether not granting a final order might result in the case being tried twice.  The trial court has seen the development of the case, is familiar with much of the evidence, is most familiar with the trial court calendar, and can best determine any likely detrimental effect of piecemeal litigation.  More important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials.  It conserves expense for the parties and clarifies liability issues for jurors when cases are tried without "empty chairs."

In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings.  An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E.2d 1273.  Likewise, regarding Civ. R. 54(B) certification, where the record indicates that the interests of sound judicial administration could be served by a finding of "no just reason for delay," the trial court's certification determination must stand.  An appellate court need not find that the trial court's certification is the most likely route to judicial economy, but that it is one route which might lead there.  Trial courts, however, should be careful not to breach the duty entrusted to them, and should avoid a mechanical application of the Civ. R. 54(B) language.

The first step that should have been taken by the court of appeals in this case was to determine whether the order appealed was "final," as defined by R.C. 2505.02.  The present order fits squarely within the statute.  The statute's first clause addresses the type of order at issue in this case -- an "order that affects a substantial right in an action which in

effect determines the action and prevents a judgment."  The order given in this case certainly affects a substantial right, that being potential recovery against an alleged tortfeasor.  The order also determines the action against the appellees.  All of the causes of action between appellants and appellees are resolved by the summary judgment.  The summary judgment prevents a judgment against appellees for appellants.  That cross-claims exist between appellees and other defendants is irrelevant -- at this point, appellants cannot recover from appellees.

Since the summary judgment granted at the trial level was a final order pursuant R.C. 2505.02, the appellate court next should have determined whether the record indicates that a finding of "no just reason for delay" could lead to judicial economy.  The paramount consideration to be made is whether the court's determination serves judicial economy at the trial level.

In this case, the trial court did not act reflexively in finding "no just reason for delay."  The court acted only after appellants filed a motion seeking an order to certify nunc pro tunc.  Thus, the trial judge did not mechanically sign a boilerplate summary judgment entry -- he realized the import of his certification.  The record reveals that that reasoned decision could result in judicial economy.

First, the life of the cross-claims against Grinnell and JDB independent of the original claims against them is tenuous, at best.  The viability of the cross-claims depends on the alleged negligence of Grinnell and JDB, and the issue of their negligence would be at the heart of an immediate appeal on the original claims.  A resolution of that issue would appear to resolve all parties' claims against Grinnell and JDB, or at least would be very helpful in settlement.  If summary judgment against plaintiffs were upheld, Grinnell and JDB might also decide to seek summary judgment against Sverdrup and Graham, respectively, which they failed to do specifically earlier.  If the failure to seek summary judgment against the complaining cross-defendants was purposeful, an immediate appeal prevents a party from keeping alive a shaky cross-claim in order to avoid trial on a more meritorious claim.

Also, an immediate appeal presents the only possible way to achieve the most efficient and straightforward trial, one with all of the parties present with an ability to present evidence against each other.  Absent an immediate successful appeal, Grinnell and JDB would remain in the trial as defendants on the cross-claims, but not as defendants on the original claims, and appellants would be unable to present evidence against them.  If appellants were to attempt to present evidence through the "back door" against Grinnell and JDB, that might deflect liability away from the remaining defendants.  Since Grinnell and JDB can only be liable through Sverdrup and Graham, respectively, it would serve their interests for Sverdrup and Graham to prevail against appellants, and each might decide not to present evidence against Sverdrup and Graham.  The unresolved appeals allow for a myriad of tangled scenarios full of duplicitous machinations which could only serve to muddle the issues and present the jury with less than the full story.

If, on the other hand, the appeals are unsuccessful, the parties may at least operate from certainty. A resolved appeal, whether successful or unsuccessful, will go far to clarify the issues for the purpose of settlement between the parties. That may well lead to the most efficient resolution possible -- no trial.

A successful appeal subsequent to trial would lead to the possibility of the case being tried twice, both times with "empty chairs." That possibility is enough to demonstrate that the trial court reasonably found that there was "no just reason for delay" for appellants' appeal.

Therefore, since the summary judgments in favor of Grinnell and JDB were "final orders" as defined by R.C. 2505.02, and since the record reflects that the interests of sound judicial administration could be served through a finding of "no just reason for delay," we reverse the judgment of the court of appeals dismissing appellants' appeal.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Wright and F.E. Sweeney, JJ., concur.

Douglas and Resnick, JJ., separately dissent.

Wisintainer v. Elcen Power Strut Co.

Douglas, J., dissenting. I respectfully dissent. Appellant, Larry E. Wisintainer, was employed by Soehnlen Piping Company ("Soehnlen") as a pipefitter. On August 26, 1987, while working on the construction of a Colgate-Palmolive Company ("Colgate") manufacturing plant in Cambridge, Ohio, appellant sustained serious head injuries when he was struck by a falling section of pipe.

Graham Container Corporation ("Graham") was the general contractor for the Colgate construction project. Sverdrup Corporation ("Sverdrup") was the construction manager. Sverdrup had subcontracted the pipefitting work to Soehnlen, appellant's employer. Appellee Grinnell Corporation ("Grinnell") was the manufacturer of beam clamps of the type used by Soehnlen to suspend the pipe which fell on appellant. Famous Supply Company ("Famous") supplied those clamps to Soehnlen. Elcen Power Strut Company (actually, Elcen Metal Products Company) ("Elcen") was a manufacturer of various industrial items, including beam clamps. The specifications and technical drawings used by Soehnlen on the construction project were prepared by appellee JDB Engineering, Inc. ("JDB").

On July 20, 1988, appellant and his wife, Evelyn R. Wisintainer ("appellants"), filed a complaint in the Court of Common Pleas of Guernsey County, naming, as defendants, Colgate, Elcen, Famous and Sverdrup. During 1988-1989, answers, amended answers, cross-claims (for contribution and/or indemnification) and answers to cross-claims were filed by the defendants. Additionally, Sverdrup filed third-party complaints against Soehnlen, Graham and JDB.

On May 11, 1989, appellants filed an amended complaint to include claims against Graham and JDB. On August 17, 1989, appellants filed a second amended complaint to add appellee Grinnell. Following these filings, additional answers, cross-claims for contribution and/or indemnification, and

answers to cross-claims were filed by the defendants.

Appellants' claims against Colgate and Elcen were eventually dismissed with prejudice. The remaining defendants named in appellants' second amended complaint (Famous, Sverdrup, Graham, Grinnell and JDB) filed motions for summary judgment against appellants. Additionally, Soehnlen moved for summary judgment against Sverdrup on the third-party complaint, and against Graham on an outstanding cross-claim by Graham for indemnification.

In a September 3, 1991 order amending a previous entry, the trial court granted Famous's, Grinnell's and JDB's motions for summary judgment, and denied the motions of Graham, Sverdrup and Soehnlen. The trial court expressly found "no just reason for delay" of an appeal from these determinations. See Civ.R. 54(B).

Appellants appealed to the court of appeals seeking immediate review of the summary judgments entered in favor of Famous, Grinnell and JDB. Meanwhile, a number of unresolved claims remained pending in the trial court. These pending matters include, but are not limited to, appellants' claims against Graham and Sverdrup, Sverdrup's cross-claim against Grinnell for contribution or indemnification, and Graham's cross-claims against Sverdrup and JDB for contribution or indemnity.

On November 4, 1991, appellants dismissed their appeal against Famous. On November 18, 1991, the court of appeals dismissed appellants' appeal against JDB and Grinnell ("appellees") for lack of jurisdiction, holding that the trial court's order granting summary judgment in favor of appellees was not a final, appealable order. Because I believe that the court of appeals was right on target in this determination, I must dissent from the majority opinion.

The issue before us is whether the trial court's order, granting summary judgment in favor of appellees (Grinnell and JDB) against appellants, is a final appealable order. For the reasons that follow, I would affirm the succinct, but obviously well thought-out, judgment of the court of appeals on this question.

To be appealable, the trial court's order granting summary judgment to appellees must constitute a "final order" within the meaning of R.C. 2505.02. The trial court's order does not. R.C. 2505.02 defines three types of 'final orders": "(1) an order affecting a substantial right in an action which in effect determines the action and prevents a judgment; (2) an order affecting a substantial right made in a special proceeding or made upon summary application after judgment; or (3) an order vacating or setting aside a judgment or granting a new trial. * * *" Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 87-88, 541 N.E.2d 64, 67. The second and third types of final orders have no applicability in this case. Therefore, we need only consider the first category of final order, to-wit: an order affecting a substantial right which in effect determines the action and prevents a judgment.

The trial court's order granting Grinnell's and JDB's motions for summary judgment affected the substantial rights of appellants to maintain their action against two alleged tortfeasors. However, I think it is equally clear that the

trial court's order granting Grinnell's and JDB's motions for summary judgment did not in effect determine the action and prevent a judgment. Appellants' claims against Sverdrup and Graham remain pending in the trial court along with Sverdrup's cross-claim against Grinnell, and Graham's cross-claims against Sverdrup and JDB. Thus, if appellants are ultimately successful in their action against defendants Sverdrup and Graham, and Sverdrup and Graham are successful on their cross-claims for contribution or indemnity against Grinnell and/or JDB, respectively, then Grinnell and JDB will be liable, albeit indirectly, to appellants. In this regard, the trial court's order granting summary judgment to appellees Grinnell and JDB did not finally resolve all of the rights and liabilities of any of the parties to this appeal.

Accordingly, I would hold that where, as here, a cross-claim remains pending against a party who has been granted summary judgment, the summary judgment order is not final and, thus, is not appealable. Furthermore, the trial court's determination of "no just reason for delay" did not (and could not) transform the court's order into a final, appealable order. See Chef Italiano, supra, 44 Ohio St.3d at 88-89, 541 N.E.2d at 68.

Finally, what if the court of appeals, pursuant to our remand, affirmed the summary judgments for Grinnell and JDB and then, during the course of trial, it is discovered that there was negligence which resulted in injury to appellants and either or both Grinnell and JDB were the responsible party(ies). The trial court and/or the jury is prevented from acting by the previously found and affirmed summary judgments.

I believe that in making their determination, the judges of the court of appeals saw these problems. I am confident they will again find a way, despite our remand, to meet the problems they saw when they entered their original judgment.

Alice Robie Resnick, J., dissenting. It is obvious to me that the majority has taken a completely new approach to Civ. R. 54(B) and abandoned years of precedent of this court. The majority's analysis of Civ.R. 54(B) is in direct contravention of the purpose of the rule. Perhaps there is merit in allowing trial courts unbridled discretion when using "no just cause for delay" language, thus permitting piecemeal appeals. However, this should be done only after the Rules Advisory Committee has had an opportunity to study all of the consequences of such massive change and has considered comments from the bench and bar. It certainly should not be done by judicial fiat.

Moreover, a determination of whether the "magic language" should be applied is not a factual question, as the majority holds; rather, it is a question of law to be determined by the facts of each case.

The majority recognizes there should be some appellate review when there is a finding of "no just reason for delay"; nevertheless, it appears that such review is perfunctory in light of the second syllabus paragraph which provides that where the interests of sound judicial administration could be served by certification, the trial court's determination of appealability "must stand." This directive will open the floodgates to piecemeal appeals causing dockets to become even

more congested and cases to languish for years in the judicial system.  This certainly cannot be in the best interests of justice or judicial economy.

The majority seems to suggest that in a lawsuit involving multiple claims or multiple parties, once the trial court is confronted with a final appealable order under R.C. 2505.02, it should decide whether Civ.R. 54(B) certification is "one route which might lead" to judicial economy.  The guidelines to be employed by the trial court in reaching this decision are nonexistent and give Ohio's trial courts carte blanche' application of Civ.R. 54(B).

An uneven application of Civ.R. 54(B) will result if certification is to be based on a trial court's determination of what is a final appealable order by simply adding the "magic language."  Under the majority's analysis, a trial court can have any of its mid-trial decisions reviewed on a routine basis grounded upon its view that certification is in the best interests of judicial economy.

Litigants and their attorneys in multi-party and/or multi-claim cases will never know if their trials will proceed uninterrupted to conclusion or be subjected to various midstream appeals.  Such a shotgun review, in most instances, will result in delays, the cases being assigned to different trial judges and, possibly, new juries, all in the interests of "judicial economy."  The majority has opened the floodgates to arbitrary appellate review of claims that are not factually or legally severable from the claims that remain pending before the trial court.  Notwithstanding the majority's simplistic explanation of this difficult issue, it remains clear to me that this case provides a perfect vehicle with which this court could have announced guidelines which the trial courts could follow to a more consistent application of Civ.R. 54(B).

I believe that Civ. R. 54(B) can be applied consistently, evenhandedly, and in a structured manner if trial courts, when making a determination whether to add the "magic language," would simply adhere to the following legally correct analysis in each situation which comes before them.

First, an order granting a motion for summary judgment in favor of a defendant and deciding all of plaintiff's claims against that defendant is generally a final order under R.C. 2505.02.  The determination of whether such an order is appealable in light of the fact that it includes multiple parties and multiple claims depends upon the application of Civ.R. 54(B).1  In such a case, to be appealable, the order must dispose of the whole case or some separate and distinct part thereof.  Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303, 306, 56 O.O.2d 179, 180, 272 N.E.2d 127, 129.  For Civ.R. 54(B) to apply, there must be, as in the case before us, at least one final judgment in an action containing multiple claims or multiple parties.  Al Barnett & Son, Inc. v. Outboard Marine Corp. (C.A.3, 1979), 611 F.2d 32, at fn.3.  Overall, it is important to note that the purposes of Civ.R. 54(B) are "'to make a reasonable accommodation of the policy against piecemeal appeals with the possible injustice sometimes created by the delay of appeals' * * *, as well as to insure that parties to such actions may know when an order or decree has become final for purposes of appeal."  (Citation deleted.)  Pokorny v. Tilby

Dev. Co. (1977), 52 Ohio St.2d 183, 186, 6 O.O.3d 416, 417, 370 N.E.2d 738, 739-740.

In setting forth an analysis of Civ.R. 54(B), this court stated: "'A trial court is authorized to grant final summary judgment upon the whole case, as to fewer than all of the claims or parties in multi-party or multi-claim actions, only upon an express determination that there is no just reason for delay until judgment is granted as to all the claims and parties. In that event, the judgment is reviewable upon the determination of no reason for delay, as well as for error in the granting of judgment; otherwise, the judgment is not final and not reviewable.'" (Emphasis added.) Alexander v. Buckeye Pipe Line Co. (1977), 49 Ohio St.2d 158, 159, 3 O.O.3d 174, 175, 359 N.E.2d 702, 703, quoting Whitaker-Merrell v. Geupel Co. (1972), 29 Ohio St.2d 184, 58 O.O.2d 399, 280 N.E.2d 922, syllabus.

"[Civ.R. 54(B)] permits both the separation of claims for purposes of appeal and the early appeal of such claims within the discretion of the trial court * * *." Alexander, 49 Ohio St.2d at 159, 3 O.O.3d at 175, 359 N.E.2d at 703. From the foregoing, however, the trial court's discretion should not, as the majority seems to suggest, be unlimited. Additionally, an appellate court is authorized to determine whether the trial court abused its discretion in concluding that there was no just reason to delay an appeal. Id. at 160, 3 O.O.3d at 175, 359 N.E.2d at 703.

The determination of this case and others like it should be guided by Curtiss-Wright Corp. v. Gen. Elec. Co. (1980), 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1. In Curtiss-Wright, the United States Supreme Court reviewed a judgment entry in which the district court expressly found no just reason for delay and which the court of appeals reversed. In Curtiss-Wright, the parties had entered into a series of contracts. Curtiss-Wright filed suit against General Electric for breach of contract seeking damages and reformation; General Electric then filed counterclaims.

On one of Curtiss-Wright's claims concerning the application of a release clause in an agreement that had already been performed, the district court granted summary judgment in favor of Curtiss-Wright and awarded it $19 million. Curtiss-Wright moved for certification of the order as a final judgment under Fed.R.Civ.P. 54(b),2 seeking an express determination that there was no just reason for delay. Finding that there was no just reason for delay, the district court directed judgment in favor of Curtiss-Wright.

On appeal, the United States Court of Appeals for the Third Circuit determined that the grant of summary Fed.R.Civ.P. 54(b) certification was an abuse of discretion and dismissed the case for want of a final appealable order. The United States Supreme Court vacated and remanded, holding that there was no abuse of discretion by the trial court.

In making its determination that the order entered was appealable, the Curtiss-Wright court cautioned that, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." Id. at 8, 100 S.Ct. at 1465, 64 L.Ed.2d at 11. It is the role of the trial court under

Fed.R.Civ.P. 54(b) to ascertain whether a final decision within a multiple-claims action is ready for appeal. It is essential that in making such determination, the trial court consider the historic policy against piecemeal appeals as well as the equities involved. Id. See, also, Sears, Roebuck & Co. v. Mackey (1956), 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297, 1307; and Alexander, 49 Ohio St.2d at 160, 3 O.O.3d at 175, 359 N.E.2d at 703.

The trial court's exercise of its discretion in making such determination must remain, with good reason, reviewable by an appellate court. Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466, 64 L.Ed.2d at 12. The polestar against which the exercise of discretion should be reviewed is the "'interest of sound judicial administration.'" Id. However, it is not up to the reviewing court to reweigh equities or reassess facts. A reviewing court must first determine whether the trial court's weighing of the equities and its factual assessments are supported by the record. Id.

Ohio would be wise if it adopted the criteria set forth in Allis-Chalmers Corp. v. Philadelphia Elec. Co. (C.A.3, 1975), 521 F.2d 360, when considering the applicability of Civ. R. 54(B).3 The Allis-Chalmers court listed factors that may be weighed by the trial court in making a determination regarding certification. Such factors include, but are not limited to, the relationship between adjudicated and unadjudicated claims; the possibility that the need for review may be mooted by future decisions in the trial court; the possibility that a reviewing court might be forced to consider the same issue a second time; the presence or absence of a claim, counterclaim, or cross-claim that might result in a setoff against the judgment sought to be made final; and other considerations such as delay, economic oppression and solvency, shortening the time of trial, the frivolity of competing claims, and expense to the parties involved. Id. at 364. Courts should be encouraged to keep the foregoing factors in mind when conducting case-by-case examinations

Once the jurisprudential concerns have been satisfied, I believe that an appellate court should give substantial deference (but not carte blanche approval) to the discretionary judgment of the trial court, as the trial court is "'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466, 64 L.Ed.2d at 12. Accordingly, in light of that standard of review, an appellate court should not disturb a trial court's assessment unless it can say that the trial court's conclusion was unreasonable, arbitrary, or capricious. Id.

Conforming to the aforementioned two-tiered standard of review, this court should first examine the trial court's evaluation of such factors as the interrelationship of the cognizable claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. Unfortunately, in reviewing this case, it would appear that there was nothing in the record to indicate that an evaluation of any factor was undertaken by the trial court or the court of appeals other than reference to the boilerplate language of Civ.R. 54(B).

Although Civ.R. 54(B) does not expressly require that the

trial court articulate the factors it relied upon in granting certification, such expression facilitates a more prompt, evenhanded and effective review especially in cases where the justification for such a determination is not apparent. Gumer v. Shearson, Hammill & Co. (C.A.2, 1974), 516 F.2d 283, 286. A succinct listing of the factors considered by the trial court and the court's respective analysis would provide the reviewing court with some basis for distinguishing between well-reasoned conclusions reached after consideration of all relevant factors and a mere boilerplate certification phrased correctly but appearing to be unsupported by an evaluation of the facts or a thorough analysis of the law. Allis Chalmers, 521 F.2d at 364. Further, it has been repeatedly emphasized that certification of an order should occur only "'in the infrequent harsh case.'" Id. at 365. A determination of whether unusual or harsh circumstances exist should be generated by an analysis of factors such as solvency, economic oppression, and equity.4 It is crucial that a reviewing court be informed of the reasons supporting the trial court's exercise of discretion, including a recitation of those factors that weighed most heavily in favor of certification. Id. at 365-366. Without such specifically stated analysis appellate review is meaningless.

Courts echoing my concern over the ever-present lack of articulated factors are numerous. See, e.g., Salina v. Star B, Inc. (1987), 11 Kan.App.2d 639, 731 P.2d 1290; Fleet Bank of Maine v. Hoff (Me. 1990), 580 A.2d 690, 691 ("Rule 54[b] requires that that certifying court make an 'express determination' of its reasons for certification. We have interpreted this language as requiring only a 'brief reasoned statement,' * * * except in cases where the 'justification is clearly apparent * * *.'" [Citations omitted.]); Bank of Lincolnwood v. Fed. Leasing, Inc. (C.A.7, 1980), 622 F.2d 944, 948 ("* * * [I]t represents this court's opinion * * * [that an articulation of the considerations underlying the exercise of the court's discretion] constitutes the 'better practice' and the failure to provide a written statement of reasons may in an appropriate case lead to a remand for such a statement. [Footnote omitted.]"); and COMPACT v. Metro. Gov. of Nashville & Davidson Cty. (C.A.6, 1986), 786 F.2d 227.

This is a difficult case since no reasons are given for the decisions of either the trial or appellate courts below on the question of certification. In making this determination, I believe that courts should be guided by Allis-Chalmers and Curtiss-Wright. In Curtiss-Wright, the court cautioned against focusing on the presence of nonfrivolous counterclaims in determining appealability. The court stated that counterclaims are not a special problem and should not be evaluated differently from other claims. Curtiss-Wright, 446 U.S. at 8-9, 100 S.Ct. at 1465, 64 L.Ed.2d at 11-12, citing Cold Metal Process Co. v. United Eng. & Foundry Co. (1956), 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311, 1318. It was particularly important to the Curtiss-Wright court that the counterclaims were severable from the claims that " * * * had been determined in terms of both the factual and the legal issues involved." Curtiss-Wright, 446 U.S. at 9, 100 S.Ct. at 1465, 64 L.Ed.2d at 12.

After a review of the cross-claims in the case before us,

it would appear that they are not factually or legally severable from the issues that were determined by the granting of summary judgment; therefore, I would find that the unresolved claims and cross-claims cannot be effectively separated from the previously adjudicated claims. Moreover, the nature of the claims that were decided is such that an appellate court may have to decide the same issues more than once during subsequent appeals.

In addition, because the cross-claims seek contribution and indemnification, appellants and appellees would continue as parties to the action regardless of the outcome of any merit appeal. In other words, if the judgments in favor of Grinnell and/or JDB were affirmed, neither party would be "free" of this litigation. Both remain active participants in the case until the cross-claims are resolved. Most notably, appellees have an interest in continuing to defend their roles, if any, in the injury to appellants.

It is also obvious that facts presented as relevant to JDB's and Grinnell's motions for summary judgment are relevant to the litigation of the cross-claims. Conversely, in Curtiss-Wright, once the release clause had been interpreted and progressed through the appeals process, the clause itself became irrelevant. The release clause could not be reinterpreted by the district court based upon facts adduced on the pending claims.

Further, in the instant case, a determination that the appeal should not proceed will not require any party to incur the expense of litigation when it might otherwise not be involved in the case. Finally, a refusal to allow the appeal at this time renders the trial court's grant of summary judgment subject to revision at any time before that court enters its judgment adjudicating all claims of appellants and the cross-claims of all the defendants. Civ.R. 54(B). See, also, Bodo v. Nationwide Ins. Co. (1991), 75 Ohio App.3d 499, 599 N.E.2d 844; and T.R. Barth & Assoc. v. Marginal Ent., Inc. (1976), 48 Ohio App.2d 218, 2 O.O.3d 182, 356 N.E.2d 766.

Quite clearly, the question of appealability in cases involving Civ.R. 54(B) is likely to be close; however, the task of examining the relevant factors is one for the trial court. As I have noted, the trial court's assessment, provided it is accompanied by reasons and analysis, is due substantial deference on review. While I do not doubt that the trial court had an intimate knowledge of the case, it must be kept in mind that no reasons were given in support of its decision that the order was appealable; therefore, I would conclude for the reasons stated herein that the trial court abused its discretion in granting appellants' request for certification under Civ.R. 54(B).

For the foregoing reasons, I would affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

FOOTNOTES:
1    Former Ohio Civ.R. 54(B) is based upon Fed.R.Civ.P. 54(b) as amended in 1961. (Staff Note to Civ.R. 54[B].)
2    Fed.R.Civ.P. 54(b) provides:
     "Judgment upon Multiple Claims or Involving Multiple

Parties.  When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express determination for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

3    The court emphasized that its listing was "* * * for purpose of illustration and should not be considered all-inclusive."  Allis-Chalmers, 521 F.2d at 364, at fn. 6.

4    We are cautioned by the court in Curtiss-Wright, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1, 12, that the isolated phrase "'infrequent harsh case,' * * * is neither workable nor entirely reliable as a benchmark for appellate review."  In other words, the trial court should not absolutely require that the petitioner show harsh circumstances before the court decides to grant certification.