[Cite as *Kopp v. Diehl Lake Co.*, 2020-Ohio-5463.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

DANIEL M. KOPP,

Plaintiff-Appellee,

v.

DIEHL LAKE COMPANY &, JOHN/JANE DOES NO.: 1-10,

Defendants-Appellees,

v.

DION FRANKET,

Third Party Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0021**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2018 CV 01116

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Dismissed.

*Atty. Brian Kopp,* and *Atty. Justin Markota,* Betras, Kopp & Harshman, LLC, 6630 Seville Drive, Canfield, Ohio 44406, for Plaintiff-Appellee and

*Atty. Bryan Ridder,* 535 North Broad Street, Suite 4, Canfield, Ohio 44406, for Defendants-Appellees and

*Atty. Thomas Loepp,* Thomas C. Leopp, Law Offices Co., LPA, 3580 Darrow Road, Stoe, Ohio 44224, for Third Party Defendant-Appellant.

Dated:  November 20, 2020

_____

**D'Apolito, J.**

**{¶1}**   Third Party Defendant-Appellant Dion Franket appeals two judgment entries of the Mahoning County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Diehl Lake Company ("DLC") and Plaintiff-Appellee Daniel M. Kopp on Franket's claims against each party for defamation.  Because the judgment entries are not final appealable orders, this appeal is dismissed for lack of subject matter jurisdiction.

## <u>FACTS AND PROCEDURAL HISTORY</u>

**{¶2}**   The following facts are taken from the affidavits of DLC Board of Trustees member, Ronald Niemiec, Ellsworth Township Zoning Inspector, Wayne Sarna, Kopp and Franket. The affidavits, and the attachments thereto, constitute the entire record before the trial court on summary judgment.

**{¶3}**   Diehl Lake is a residential subdivision located in Ellsworth Township, Ohio, which is operated by DLC, a nonprofit Ohio corporation charged with enforcing the "Declaration of Covenants, Easements, Restrictions and Assessment Lien" ("Declarations") that governs the subdivision.  Declaration Article I, Section 2(d), captioned "Nuisances," provides: "No noxious or offensive activity shall be permitted on any lot nor shall the same be used in any way for any purpose, which might endanger the health of, or unreasonably disturb, any other lot owner or occupant."

{¶4} DLC acts through a Board of Trustees ("Board") elected by the lot owners. Franket, at all times relevant to the complaint, was a member of the Board.

{¶5} Kopp and Franket are co-lessees of Lot. No. 13 pursuant to a 99-year lease executed in 2016 with DLC. Lot No. 13 is described as a shared lot with two garages, one belonging to Kopp and the other belonging to Franket. Both men own single-family homes on parcels adjacent to Lot No. 13. The lease prohibits any "unsightly or unsanitary accumulation or condition on said property" or any use of the property that results in "annoy[ance] or disturb[ance] to the "surrounding Lessees."

{¶6} On August 21, 2017, at a special meeting of the Board conducted at Kopp's request and with Franket in attendance, Kopp alleged that Franket was maintaining a persistent nuisance on his portion of Lot No. 13. (Niemiec Aff. at ¶ 2.) The minutes from the meeting read, in relevant part, "[Kopp] is selling his property and feels that [Franket] has many items on the shared property. Large trailer, box trailer, old hot water tank, metal box, lawn roller, plastic sheeting, piles of fire wood, pieces of concrete. Pictures were passed around showing all of the listed items." (Niemiec Aff., Exhibit A, Minutes of 8/21/17 Meeting, p. 1.)

{¶7} However, Franket disputes that the photographs depicted the actual contents of his portion of Lot No. 13. His affidavit reads, in relevant part, "Kopp's behavior at that meeting where he showed pictures of things that were not on [my] lot nor on the shared lot, was extremely defamatory. [My] impeccable lifelong reputation was ruined in a matter of an hour." (Franket Aff. ¶ 20.)

{¶8} The minutes from the Board meeting further read:

[Franket] feels that it's his property also and that he should be able to keep the trailers there and he is working on splitting the firewood for the upcoming winter season. [Franket] also stated that he did not want to move his trailers from the property. [Franket] stated that [Kopp] is starting fires on the property also. [Franket] stated he has maintained the lot over the past several years, grass cutting, plowing snow, etc.

(Niemiec Aff., Exhibit A, Minutes of 8/21/19 Meeting, p. 1.)

Case No. 20 MA 0021

{¶9}    After a physical examination of the property, the Board found that Franket's portion of Lot No. 13 contained "an accumulation and storage of junk, disabled vehicles, inoperative machinery, discarded items and other debris * * *." The Board further found that Franket's portion of the lot constituted a "nuisance," as that term is defined by the Declarations. (Niemiec Aff. at ¶ 3.)

{¶10}  However, Franket's affidavit reads, in pertinent part:

At the time that [the Board] (through board members, Ron Niemiec and Dave Tepsick) inspected [Lot # 13] to investigate the complaint of Kopp, there was absolutely no accumulation and storage of junk. Franket had no disabled vehicles on the lot. Kopp's car sat there for months – with an expired plate. At the time of said inspection, there was no inoperative machinery. There were no discarded items and other debris. Stated simply, there was nothing for Franket to clean up; he could not have "refused to clean" the lot.

(Franket Aff., ¶ 21.)

{¶11}  The Board issued a verbal request to Franket that he remediate his portion of the lot, but he refused. (Niemiec Aff. at ¶ 3.) As a consequence, the Board's legal counsel sent a letter to Franket dated March 16, 2018, notifying him of the nuisance and demanding that he remedy the situation by March 30, 2018. (Niemiec Aff. at ¶ 4.) The letter reads, in relevant part, "I am informed by the [Board] that a 'nuisance' exists presently on [Lot No. 13]. The nuisance consists of the accumulation and/or storage of junk, disabled vehicles, inoperative machinery or equipment, discarded items, and other debris." (Niemiec Aff., Exhibit B, 3/16/18 Letter, p. 1.)

{¶12}  In the meantime, on March 10, 2018, Kopp contacted Ellsworth Township Zoning Inspector, Wayne Sarna to complain about Franket's portion of Lot No. 13. (Sarna Aff. ¶ 2.) Section 618 of the Ellsworth Township Zoning Ordinances, captioned "Junk," reads, in its entirety:

In order to protect the residents of Ellsworth Township from conditions conducive to the infestation and breeding of wild animals, pests, vermin,

Case No. 20 MA 0021

insects, and rodents, the accumulation or storage of junk, junk vehicles, disabled or inoperative machinery or equipment, vehicles, machinery parts, rages, or other discarded objects or debris shall be prohibited in Agricultural and Residential Districts.

Niemiec's affidavit and the letter from the Board's counsel both parrot the language of Section 618.

{¶13} Franket met Sarna at Lot No. 13 on March 22, 2018. According to Sarna's affidavit, he observed "an accumulation of debris, junk, discarded items, trash, and waste," as well as "trailers that had expired license plates" on the Franket-controlled portion of Lot No. 13. As a consequence, Sarna informed Franket that his portion on Lot 13 was in violation of Section 618 of the Ellsworth Township Zoning Ordinances. According to Sarna, Franket objected to the Township's findings, and refused to remediate his portion of the lot. (*Id.* at ¶ 4.)

{¶14} Later that day, Sarna sent a letter to Franket documenting Sarna's findings and demanding abatement of the nuisance. The letter reads, in relevant part:

I met with you at the site of the above parcel and noted you are storing and have placed debris, junk, discarded items, trash and waste upon the parcel owned as a common area by [DLC]. I attempted to discuss cleanup of all junk, debris, discarded items, and trailers that have Pennsylvania plates and expired tags. You stated you were not interested in clean up or moving the trailors [sic].

The correspondence further reads that if Franket failed or refused to "clean[ ] up" the property on or before March 31, 2018, the trailers will be impounded by the Mahoning County Sheriff's Office "since the Pennsylvania plates are expired." (Sarna Aff. at ¶ 4, Ehxibit C, Letter at p. 1.)

{¶15} Kopp and DLC argue that Franket did not contest the Sarna's violation nor file an appeal with the Ellsworth Board of Zoning Appeals. Instead, Franket chose to remove some items and partially remediate the property.

Case No. 20 MA 0021

**{¶16}** However, Franket provided the following summary of his interaction with Sarna:

> [Franket] was present when Wayne Sarna inspected [Lot No. 13] for the first time.  Sarna found nothing wrong and even asked why he was there and what they wanted him to do about it. Mr. Sarna then received an evening visit from Dave Betras (Betras, Kopp, & Harshman), who demanded that Sarna write a report supporting Kopp's claims. Under pressures from Kopp's counsel, Sarna initially wrote a letter supporting Kopp's claim, word-for-word, Sarna then talked to Franket personally, asked Franket to change his then Pennsylvania license plates to Ohio plates, and then told Franket that everything else was fine. There was no order to remove "junk" from the lot.  As a result, Franket had no need to appeal any decision of the zoning inspector.

(Franket Aff., ¶ 22.)

**{¶17}** Three weeks later, on April 12, 2018, Sarna sent a letter to DLC documenting his reinspection of the subject property.  The letter reads, in pertinent part, "the items of junk, debris, discarded items, trash and waste upon the parcel appear to have been cleaned up by [Franket].  The trailers parked on the parcel now have Ohio plates with current tags and removal is no longer warranted." Sarna concludes that the "public nuisance that had existed is now abated." (Sarna Aff., ¶4, Exh. E, Letter at p. 1)

**{¶18}** On April 27, 2018, and despite the representations made in Sarna's April 12th letter, Kopp filed the complaint in this action against DLC, alleging public nuisance, private nuisance, negligence, and breach of contract.  The complaint seeks damages and injunctive relief.

**{¶19}** Kopp did not name Franket as a defendant, but did name "John Does #1-10, described as "[p]ersons, partnerships or corporations whose identity could not be readily ascertained despite the exercise of due diligence, but whose conduct contributed to the injury of [Kopp.]" (Complt., ¶ 3.) The complaint is replete with references to Franket as the party responsible for the alleged nuisance.

{¶20} Kopp asserts that Franket had continually stored garbage, debris, junk, machinery and equipment on the property since taking possession of Lot No. 13. Kopp further asserts that Franket's actions constituted a breach of the terms of the lease, the Declarations, and Ellsworth Township Zoning Resolution Section 618. The claims are asserted exclusively against DLC as the owner of Lot #13, as Kopp alleges that DLC failed to enforce the Declarations and the terms of the lease, which give DLC the authority to enter and take possession of Lot No. 13 in the event of a breach by a lessee.

{¶21} On September 4, 2018, DLC filed an answer and third-party complaint against Franket for indemnification and contribution. On October 1, 2018, Franket filed an answer to the third-party complaint, as well as a crossclaim against DLC and a claim against Kopp for defamation.

{¶22} In his Affidavit, Franket writes, "A report from [Sarna] stating that Franket had no junk at his property was dated April 12, 2018. The instant lawsuit was filed on April 27, 2018. Clearly, the intention of this lawsuit was purely to harass him, Sarna had found no problems with Franket's property at the time of the filing of suit. (Franket Aff., ¶ 17-19.)

{¶23} A mediation hearing was conducted on May 17, 2019, however, the matter was not resolved. Evidently, the parties continued settlement negotiations as on June 19, 2019, Kopp and DLC filed a motion to enforce settlement and for attorneys' fees. According to the motion to enforce, the parties had agreed to a global settlement of all claims based on the execution of a new lease for Lot No. 13. The motion reads, in relevant part, "It was also around [August 9, 2018 that Kopp and DLC] acknowledged that Franket had substantially cured the alleged nuisance on the subject property." According to the affidavit of Kopp's counsel attached to the motion to enforce, the parties successfully drafted a new lease, with provisions satisfactory to all parties. After the parties agreed upon the terms of the new lease, Franket, for the first time, demanded a monetary settlement. (Markota Aff., ¶ 7.)

{¶24} The trial court never ruled on the motion to enforce settlement. Instead, in September of 2019, DLC sought leave to file a motion for summary judgment instanter on Franket's crossclaim for defamation. The following month, Kopp sought leave to file

Case No. 20 MA 0021

a summary judgment motion instanter on Franket's claim for defamation. Leave was granted to both parties. Both parties asserted the defenses of truth and qualified privilege.

**{¶25}** Franket filed opposition briefs to the respective summary judgment motions and attached his own affidavit in support of the opposition briefs. DLC filed a sur-reply on October 18, 2019. The sur-reply asserted challenges to 18 of the 26 averments in Franket's affidavit, alleging that the averments are either conclusory, not made on personal knowledge, irrelevant to Franket's defamation claims, and/or constitute hearsay.

**{¶26}** In separate judgment entries issued on January 23, 2020, the trial court entered summary judgment in favor of DLC and Kopp on Franket's defamation claims. With respect to DLC, the trial court found that any statements made by DLC during the investigation of Kopp's allegations to the Board were substantially true, based on Franket's subsequent remediation of the property. In so finding, the trial court credits the averments in the affidavits of Niemiec and Sarna as uncontroverted. The trial court found that Franket's affidavit was "replete with inadmissible statements and claims, and fail[ed] to raise a genuine issue of material fact or law for trial." (DLC J.E., p. 10.)

**{¶27}** In the alternative, the trial court opined that the Board's statements were protected by qualified privilege, as they were made while the Board was executing a public duty. Although the trial court recognized that a showing of actual malice would negate the privilege, it declined to credit any portion of Franket's affidavit. The judgment entry further reads, "This is a final appealable order and there is no just cause for delay." (*Id.*)

**{¶28}** With respect to Kopp, the trial court found that any statement made by Kopp when he initiated the investigation of Franket's portion of Lot No. 13 was substantially true "[g]iven that the nuisance persisted due to Franket." (Kopp J.E., p. 3.) The Kopp judgment entry does not contain any Civ. R. 54(B) language.

**{¶29}** This timely appeal followed. Neither DLC nor Kopp challenged the appealability of the judgment entries. However, counsel for both DLC and Kopp conceded at oral argument that the nuisance, negligence, and breach of contracts claims against DLC, and the indemnification/contribution claims against Franket are still pending.

**FINAL APPEALABLE ORDER**

{¶30} Civ.R. 54(B), captioned "Judgment Upon Multiple Claims or Involving Multiple Parties," reads, in its entirety:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶31} A trial court's invocation of Civ.R. 54(B) "does not turn an otherwise non-final order into a final appealable order." *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989). We review a purported final order that disposes of some, but not all, claims in an action by applying a two-step analysis. *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354, 617 N.E.2d 1136 (1993).

{¶32} The first inquiry involves the predominantly legal question of whether the order sought to be appealed is a final appealable order as defined by R.C. 2505.02. R.C. 2505.02(B)(1) reads, in its entirety, "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:  An order that affects a substantial right in an action that in effect determines the action and prevents a judgment."

{¶33} A "substantial right," as defined by R.C. 2505.02(A)(1), is a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." An order affects a substantial right

when that order is "perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

**{¶34}** If the judgment appealed is not a final appealable order, an appellate court lacks jurisdiction to review it. *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, ¶ 14. Thus, in the absence of a final appealable order, an appellate court must dismiss the appeal. *Estate of DeVore*, 7th Dist. Harrison No. 18 HA 0004, 2019-Ohio-2719, ¶ 47.

**{¶35}** Relief from the trial court's summary judgment entries in this case would not be foreclosed if Franket's appeal is not immediately considered. Consequently, we find that the judgment entries are not final appealable orders.

**{¶36}** Even assuming that the judgment entries constitute final appealable orders, the trial court's determination with respect to the second inquiry under Civ. R. 54(B) is "essentially a factual determination—whether an interlocutory appeal is consistent with the interests of sound judicial administration, i.e., whether it leads to judicial economy." (Emphasis deleted.) *Wisintainer, supra*, at 354, 617 N.E.2d 1136. Trial judges "stand in an unmatched position to determine whether an appeal of a final order dealing with fewer than all of the parties in a multiparty case is most efficiently heard prior to trial on the merits." *Id.* at 354–355, 617 N.E.2d 1136 (the trial court can best determine how the court's and parties' resources may most effectively be utilized).

**{¶37}** "The trial court has seen the development of the case, is familiar with much of the evidence, is most familiar with the trial court calendar, and can best determine any likely detrimental effect of piecemeal litigation. More important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials." *Id.* at 355.

**{¶38}** When an appellate court reviews the trial court's decision to issue a Civ.R. 54(B) certification, it shall not substitute its judgment for the trial court where some competent and credible evidence supports the decision. *Id.* at 355, 617 N.E.2d 1136 (this decision is entitled to the same presumption of correctness as other factual findings). *Id.*

**{¶39}** Sarna avers, and Franket does not deny, that he acquired Ohio license plates for the vehicles on Lot No. 13 in accordance with Sarna's directive. The trial court cites the foregoing admission as evidence of Franket's partial remediation, and concludes

that the partial remediation constitutes evidence that the accusations of Kopp and DLC were substantially true. However, Franket also alleges that the complaint in this case constitutes defamation, since it was filed in spite of Sarna's conclusion that the nuisance had been abated. Because Franket's defamation claims are, in part, predicated upon the nuisance, breach of contract, and negligence claims alleged in Kopp's complaint, we find that judicial economy is not served by a bifurcated appeal.

**{¶40}** Furthermore, Kopp's nuisance, negligence, and breach of contract claims against DLC are still pending for trial, as is DLC's claim against Franket for indemnification/contribution. A jury may conclude that Kopp failed to demonstrate a nuisance on Lot No. 13 or a breach of the lease or negligence on the part of DLC. Therefore, a decision affirming summary judgment on the defamation claims, which is predicated in part upon the truth of the allegations in the complaint, may ultimately be at odds with a potential jury verdict on the underlying claims.

**{¶41}** In summary, we find that relief from the trial court's summary judgment entries in this case would not be foreclosed if Franket's appeal is not immediately considered. Further, insofar as the trial court and the parties concede that genuine issues of material fact remain with respect to Kopp's nuisance, negligence, and breach of contract claims, we find that judicial economy is not served by a bifurcated appeal. Accordingly, the judgment entries are not final appealable orders, and this appeal is dismissed for lack of subject matter jurisdiction.


Donofrio, J., concurs.

Robb, J., concurs.


Case No. 20 MA 0021

---

For the reasons stated in the Opinion rendered herein, the judgment entries from the Court of Common Pleas of Mahoning County, Ohio, are not final appealable orders, and this appeal is dismissed for lack of subject matter jurisdiction. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**