This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Jessica T. Huff, appeals from a nunc pro tunc judgment entry of the Summit County Court of Common Pleas, Domestic Relations Division, that modified a previous child support order entered in this matter. We affirm.
{¶ 2} On March 21, 2000, Appellee, Ronald L. Huff, filed a motion to modify child support obligations. Subsequently, Appellant filed a motion to dismiss, a motion for contempt, and a motion for attorney fees. A hearing was held and the magistrate issued his decision on March 5, 2001. The trial court issued a judgment entry that same day purporting to adopt the magistrate's decision.
{¶ 3} Thereafter, Appellant timely filed objections to the magistrate's decision. Appellee filed a response. On December 18, 2001, the trial court overruled Appellant's objections and entered an order adopting the magistrate's decision of March 5, 2001. Appellant timely appealed.
{¶ 4} On January 28, 2002, this Court issued a show cause order and explained that the order from which Appellant was appealing may not be a final, appealable order. Subsequently, on March 8, 2002, the trial court filed a nunc pro tunc judgment entry which incorporated the magistrate's decision of March 5, 2001. Appellant filed a motion to supplement the appellate record. Appellant's motion was granted on March 20, 2002. Appellant raises six assignments of error for our review.
 ASSIGNMENT OF ERROR I
{¶ 5} "The [t]rial [c]ourt erred as a matter of law in its [j]udgment [e]ntry [n]unc [p]ro [t]unc by failing to set forth the rights, duties, and obligations of the parties independent of the magistrate's decision, and the Court herein does not have jurisdiction to hear this appeal."
{¶ 6} In her first assignment of error, Appellant asserts that the March 8, 2002, judgment entry of the trial court is not a final, appealable order. More specifically, Appellant maintains that because the magistrate's decision was incorporated verbatim, the trial court did not independently set forth relief on the issues submitted to the trial court. We disagree.
{¶ 7} In Harkai v. Scherba Industries, Inc. (2000),136 Ohio App.3d 211, this Court addressed the reviewability of a trial court's action on a magistrate's decision. As only a judge may terminate an action by entering judgment, a trial court order stating only that it is adopting a magistrate's decision is not final. Harkai,136 Ohio App.3d at 220-21. "[S]uch incorporation or adoption of a judgment fails to meet the requirement of the certainty of judgments since it fails to disclose how the matter was resolved." Id. at 220. Furthermore, for a judgment to be final for purposes of an appeal, "the content of the judgment must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case. If the judgment fails to speak to an area which was disputed, uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court." Weber v. Weber
(May 23, 2001), 9th Dist. No. 00CA007722, at 7, quoting Walker v. Walker
(Aug. 5, 1987), 9th Dist. No. 12978, at 4-5. See, also, Harkai,136 Ohio App.3d at 216. One must be able to discern the relief granted to the parties from the language of the entry. Perrine v. Perrine, 9th Dist. No. 20923, 2002-Ohio-4251, at ¶ 7. See, also, Harkai,136 Ohio App.3d at 215.
{¶ 8} Upon review of the record, we find that the March 8, 2002 judgment entry of the trial court, which adopts the magistrate's decision, is a final, appealable order. The order discloses how the matter was resolved and provides a statement of the relief granted to the parties. See Harkai, 136 Ohio App.3d at 215. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
{¶ 9} "The [t]rial [c]ourt erred as a matter of law to use the children's Social Security benefits as Appellant's income for child support purposes."
{¶ 10} In her second assignment of error, Appellant argues that the trial court erroneously included the minor children's Social Security payments in her gross income calculation for child support purposes. Appellant's assignment of error is not well taken.
{¶ 11} As a trial court possesses considerable discretion in child support matters, a decision will be reversed only upon a finding of an abuse of discretion. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. See, also, Ford v.Ford, 9th Dist. No. 3222-M, 2002-Ohio-3498, at ¶ 8. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
{¶ 12} A child support award is based on the obligor's "income." R.C. 3113.21.5(A)(1).[1] "Income" is defined as either "the gross income of the parent[,]" for a parent who is employed to full capacity, or "the sum of the gross income of the parent, and any potential income of the parent[,]" for a parent who is unemployed or underemployed. R.C. 3113.21.5(A)(1). "`Gross income' means *** the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from *** social security benefits[.]" R.C. 3113.21.5(A)(2).
{¶ 13} Recently, the Ohio Supreme Court found that "the underlying intent behind Social Security payments to a child is to provide support that the disabled parent is unable to provide. Thus, Social Security benefits are characterized as a substitute for the disabled parent's earnings[.]" Williams v. Williams (2000), 88 Ohio St.3d 441, 443. The Court further explained that Social Security benefits are earned by the disabled parent, as they represent contributions that a worker has made throughout the course of employment. Id. See, also, Carpenter v. Reis
(1996), 109 Ohio App.3d 499, 505. Consequently, "the Social Security payments are deemed income of the disabled parent that enure to the sole benefit of the child[;] Social Security payments are tantamount to earnings by the disabled parent." Williams, 88 Ohio St.3d at 443, 444.
{¶ 14} From this language, the trial court could correctly conclude that the Social Security payments received by the minor children should be included in Appellant's income for the calculation of child support obligations. In the year 2000, Appellant received $478.50 per month in Social Security disability payments. Two minor children each received $48 per month in Social Security disability payments. For purposes of child support obligations, Appellant was deemed to have $6,894 of income per year by the trial court. This figure included the monthly disability payments received by her children.
{¶ 15} As the trial court's calculation is supported by the language in the pertinent Revised Code sections and the findings and analysis in Williams, we are unable to conclude that the trial court abused its discretion when calculating Appellant's income for child support purposes. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
{¶ 16} "The [t]rial [c]ourt erred as a matter of law to reverse a previous [o]rder which was definitive and res judicata on the issue of imputation of income from Appellee's voluntarily terminated second job for purposes of [the] child support calculation." (Emphasis sic.)
{¶ 17} In her third assignment of error, Appellant avers that the trial court erred by reversing a previous order "which was definitive and res judicata" in regards to imputing income to Appellee. Appellant's assignment of error lacks merit.
{¶ 18} "An appellant bears the burden of affirmatively demonstrating error on appeal." Hutchison v. Henderson, 9th Dist. No. 20862, 2002-Ohio-4521, at ¶ 39, quoting In re Hiltabidel, 9th Dist. No. 21009, 2002-Ohio-3627, at ¶ 58. This Court notes that Appellant has failed to cite to any legal authority that would support this issue and thus has failed to assert how the trial court's actions constituted error. In re Spence (Mar. 28, 2001), 9th Dist. No. 99CA007522, at 12 (declining to address assignment of error where appellant failed to cite law applicable to issue under review). As such, Appellant has declined to provide citations to authorities supporting her assignment of error and the standard of review applicable to the assignment of error as mandated by App.R. 16(A)(7) and Loc.R. 7(A)(6). See State ex rel. Rothal v.Smith, 9th Dist. Nos. 20938 and 20950, 2002-Ohio-7328, ¶ 90; Anglev. Western Reserve Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." State v. Clifford, 9th Dist. No. 20871, 2002-Ohio-4531, at ¶ 15, quoting Cardone v.Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18.
{¶ 19} As Appellant has failed to cite to any legal authority that would support her third assignment of error, we shall disregard this alleged error. See App.R. 16(A)(7) and Loc.R. 7(A)(6). Accordingly, this Court will not address Appellant's third assignment of error.
 ASSIGNMENT OF ERROR IV
{¶ 20} "The [t]rial [c]ourt ruled against the weight of the evidence and abused its discretion to find that Appellee's most recent termination of his employment was involuntary; and further abused its discretion and ruled against the weight of the evidence to therefore find that Appellee's income for child support calculations should be $18,720 plus unemployment of $4,288 for 12 weeks and, to therefore, decrease his child support."
{¶ 21} In her fourth assignment of error, Appellant essentially challenges the factual determinations of the trial court. Specifically, Appellant asserts that the trial court committed error by not only concluding that Appellee's termination was involuntary but also basing Appellee's income calculation on this finding. We disagree.
{¶ 22} Although the standard of review in child support cases is abuse of discretion, an appellate court should not reverse factual findings of the trial court if there is "some competent and credible evidence" in support of the trial court's findings. Wisintainer v. ElcenPower Strut Co. (1993), 67 Ohio St.3d 352, 355. See, also, Masitto v.Masitto (1986), 22 Ohio St.3d 63, 66; State v. Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 8, fn. 2; Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7 (concluding that "when reviewing the factual conclusions underpinning the classification of property in divorce cases[,]" an appellate court reviews the record to determine whether the findings are "supported by some competent, credible evidence"). The clearly erroneous standard is highly deferential as even "some" evidence is sufficient to sustain a trial court's judgment. Unrue
at ¶ 9, quoting Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7. "Thus, this [c]ourt is guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony." Unrue at ¶ 9, quoting Spinetti, supra, at 7-8.
{¶ 23} Appellant contends that Appellee's termination was voluntary. "Voluntary" is defined as an act "done by design or intention[;] acting or done of one's own free will without valuable consideration or legal obligation." Webster's Ninth New Collegiate Dictionary (1984) 1322. See, also, Black's Law Dictionary (6th Ed. 1990) 1575. Conversely, an "involuntary" act is something "done contrary to or without choice." Webster's at 637. "An involuntary act is that which is performed with constraint or with repugnance, or without the will to do it." Black's Law Dictionary at 827.
{¶ 24} "Income" is defined as either "the gross income of the parent[,]" for a parent who is employed to full capacity, or "the sum of the gross income of the parent, and any potential income of the parent[,]" for a "parent who is unemployed or underemployed." R.C. 3113.21.5(A)(1). The question of whether a parent is voluntarily underemployed is a question of fact for the trial court. Bender v.Bender (July 18, 2001), 9th Dist. No. 20157, at 7, citing Rock v. Cabral
(1993), 67 Ohio St.3d 108, 112. Additionally, "gross income" includes the "total of all earned and unearned income from all sources during a calendar year *** and includes, but is not limited to, income from salaries, wages, overtime pay and *** unemployment insurance benefits[.]" R.C. 3113.21.5(A)(2).
{¶ 25} In its judgment entry, the trial court found that "[Appellee] lost his job at CCBMR/DD on or about October 13, 2000. He resigned after disciplinary action was taken against him. In a negotiated settlement he agreed, among other things, never again to seek employment there. Underlying the unfortunate incidents that led to this action was [Appellee's] depression, which affected his ability to work effectively in this very demanding job. The [court] finds that the termination was involuntary." Appellee testified at the hearing, and also stated in his affidavit, that he chose resignation instead of termination in order to obtain a severance package that would enable him to continue health coverage for his minor children. Appellee additionally stated that although the explanation offered by his former employer for the termination was "insubordination," he meant to do nothing of the sort. Appellee explained that he recently began a new "one-on-one" caregiver assignment. He was caring for a mentally retarded client who was much larger and stronger than Appellee. Appellee avers that the client was also aggressive and abusive. Allegedly, the client "habitually and frequently hit and bit [Appellee.]" Appellee further explained that he requested a lateral transfer several times but these requests were to no avail. He than began to apply for other jobs but was also unsuccessful in these endeavors.
{¶ 26} Appellee stated that on September 25, 2000, the incident that led to his termination occurred. In an incident report, Appellee recorded that he was moving the client to a classroom when the client soiled his underwear and sweatpants. Appellee assisted him to the restroom and began to help the client change into new clothing. The client subsequently became aggressive and verbally threatened Appellee. The client "struck out *** several times" but made contact with Appellee on only two occasions. Appellee stated that the client was "out of control[;]" he feared the client would injure him again so he "bolted" to seek help. Appellee then informed his supervisor that he could no longer care for that particular client and he requested leave. The supervisor allegedly informed Appellee that leaving the building was insubordination. Appellee remarked that "[he] felt that if [he] had stayed, [he] was going to put [him]self in jeopardy. And [he] was not able to handle that at that time, so [he] did choose to leave." We note that medical reports indicate Appellee was battling depression and anxiety not only at the time this incident occurred, but also in the month preceeding it.
{¶ 27} Additionally, Appellee offered testimony about his current wages. Appellee is presently a seasonal employee; he is laid off for three months out of the year and receives $349 per week in unemployment benefits. The trial court found this amounted to $4537 per year in unemployment benefits for the three months Appellee was not working. Appellee estimated his current salary to be between $11.75 and $12.25 per hour; he worked an estimated 40 hours per week. The trial court used an average of $12.00 in its calculations and found Appellee earned $18,720 per the thirty-nine weeks he was employed out of the year.
{¶ 28} Upon a thorough review of the record, we decline to hold that the trial court's finding was an abuse of discretion. In light of the above evidence, the trial court could correctly conclude that Appellee's termination was involuntary; thus, the trial court's findings are supported by some competent, credible evidence. Accordingly, Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
{¶ 29} "The [t]rial [c]ourt erred as a matter of law to not enforce a prior order of the court pertaining to Appellee's contempt and obligations to pay."
{¶ 30} In her fifth assignment of error, Appellant contends that the June 18, 1999 magistrate's order pertaining to Appellee's contempt charge and obligations to pay may not be modified by the March 8, 2002 order. Additionally, Appellant asserts that the trial court erroneously credited Appellee for $18,000 in paid child support obligations from the entire amount of his pension fund proceeds. Appellant's assignment of error is not well taken.
{¶ 31} The divorce decree provides that "[Appellee] agrees to assign to [Appellant] as an alternate payee, the right to receive fifty percent (50%) of the monthly payments payable to [Appellee] when he actually retires or separates from service. [Appellant] shall also receive fifty percent (50%) of any withdrawals that [Appellee] makes from PERS." In light of this provision, Appellant correctly asserts that she is entitled to one half of Appellee's PERS account. However, Appellant fails to cite to any portion of the record where the trial court actually credited Appellee's child support obligations with Appellant's share of the pension proceeds. The judgment entry concludes that Appellee's "payments remitted after April 30, 1999, totaled $24,457.79[,]" but does not indicate that any amount of this figure consisted of Appellee's PERS funds. Additionally, Appellant asserts that "the amounts [Appellee] must pay are res judicata and cannot be nullified by another [m]agistrate," but has failed to cite to any legal authority that would support this assignment of error.
{¶ 32} "An appellant bears the burden of affirmatively demonstrating error on appeal." Hutchison v. Henderson, 9th Dist. No. 20862, 2002-Ohio-4521, at ¶ 39, quoting In re Hiltabidel, 9th Dist. No. 21009, 2002-Ohio-3627, at ¶ 58. An appellant's brief must contain argument and law, "with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). SeeState v. Taylor (February 9, 1999), 9th Dist. No. 2783-M, at 7 (an appellant must "demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record"). If the party presenting an assignment of error for review "fails to identify in the record the error on which the assignment of error is based" this Court may disregard the assignment of error. See App.R. 12(A)(2). Additionally, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." State v.Clifford, 9th Dist. No. 20871, 2002-Ohio-4531, at ¶ 15, quotingCardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18.
{¶ 33} As Appellant has not only failed to identify any part of the record demonstrating error by the trial court but also failed to cite any legal authority that would support her assignment of error, this Court shall not further address this alleged error. See App.R. 12(A)(2) and App.R. 16(A)(7). Accordingly, Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
{¶ 34} "The [t]rial [c]ourt abused its discretion and ruled against the weight of the evidence to order Appellee to pay only $350 in attorney's fees."
{¶ 35} In her sixth assignment of error, Appellant maintains that the trial court erred when it granted an award of only $350 of her $2,750 in attorney's fees. We disagree.
{¶ 36} It is important to note that the party retaining the attorney generally bears the burden of payment. Smith v. Smith (Dec. 5, 2001), 9th Dist. No. 20519, at 8, citing Bowen v. Bowen (1999),132 Ohio App.3d 616, 642. See, also, Morgan v. Morgan, 9th Dist. No. 01CA0017, 2001-Ohio-1640, at 6. However, R.C. 3109.05(C) provides "[i]f any person required to pay child support *** is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt[.]"
{¶ 37} Accordingly, in post-divorce contempt proceedings, the party filing the successful contempt action is entitled to an award of reasonable attorney fees. Boraggina v. Boraggina (Mar. 30, 2001), 6th Dist. Nos. L-99-1272 and L-99-1409. An appellate court reviews a trial court's decision regarding attorney fees under an abuse of discretion standard. Holcomb v. Holcomb (Sept. 26, 2001), 9th Dist. No. 01CA007795, at 16. Absent such an abuse, we will not reverse a trial court's award of attorney's fees in a post-divorce action. Parzynski v. Parzynski (1992),85 Ohio App.3d 423, 439.
{¶ 38} In the present case, the trial court found that "[a]n award of attorney's fees is mandatory on a finding of contempt for failure to pay support. [The court] find[s] that a reasonable award is $350 for this aspect of the case. *** [Appellant's] attorney submitted a statement detailing services to support a much higher award. However, most of the services were not directed to the contempt claim. Besides the other issues determined here, the parties submitted claims to modify the parenting decree and for a civil protection order." Upon a review of the record, this Court is unable to find a showing of an abuse of discretion in the trial court's order holding each party responsible for their own attorney's fees. Accordingly, Appellant's sixth assignment of error is overruled.
{¶ 39} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.
WHITMORE, J. CONCUR.
[1] At the time of the hearing, R.C. 3113.21.5 governed the procedures a trial court must follow when calculating a child support award. We acknowledge that R.C. 3113.21.5 was repealed, effective March 22, 2001, and replaced by R.C. 3119.01, et seq. See Am.Sub.S.B. No. 180. However, this Court will review Appellant's assignment of error based on the use of R.C. 3113.21.5, which was the statute in effect at the time of the filing of the motion. See Williams v. Williams (1992), 80 Ohio App.3d 477,482; Sickles v. Potts (1971), 29 Ohio App.2d 195, paragraph two of the syllabus; Jilek v. Jilek (June 18, 1993), 6th Dist. Nos. L-92-304 and L-92-305.