{¶ 1} This appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, Domestic Relations Division, in post-divorce child support proceedings.
 {¶ 2} Because we conclude that the trial court erred in its calculations of child support, we reverse.
 {¶ 3} Appellant, Lawrence Ontko, and appellee, Carla Ontko, divorced in 1996, and have been involved in various motions and appeals regarding child support and custody since 1998. The instant appeal involves the proper calculation of the appellant's child support obligation for the three minor children from June 1998 to August 2000. Since 1999, this case has been before this court six times, either in direct appeals or actions in mandamus. After several directives from this court, the trial court finally conducted a hearing on August 5, 2003, and heard the following evidence regarding the June 1998 to August 2000 time period.
 {¶ 4} Appellant testified that the parties had a shared parenting plan and that the children spent six months with each parent. Appellant would get the children from the beginning of their second school semester, around January 20, through mid-July. Appellee would then take the children for the first school semester. All through the year, appellant bought clothing for the children or gave them money to purchase things they needed. He noted that his son had participated in football, Laura was "in basketball," and Allison may have had some cheerleading expenses. He also said that he had paid for health insurance for the children, as ordered. His monthly cost for the family policy was $186.50; the cost of a single person policy would be $101.81. He stated that although the court had imputed $49,000 as his yearly income, his actual retirement income was about $28,000 during the relevant time period.
 {¶ 5} In order to meet his expenses, appellant had used some of the savings received as part of the marital property settlement from the divorce and the money from his buy-out when he retired. Appellant stated that after the divorce, he moved from his small 750 square feet house into a larger 1,600 square feet home, to accommodate the children. He then rented the smaller house to the parties' oldest, emancipated daughter. One of the children, Allison, had moved back in and remained with him since November 1999, two months before her mother's shared time was over. Appellant also noted that during the relevant time period, he owned a 1980 Sea Ray boat which was trailered, stored in his yard, and used about four times per year. He also owned four older, inexpensive vehicles: a 1986 Dodge Lancer purchased for $1,500 in 1992-93 (junked after 212,000 miles); a 1985 Dodge Ram van purchased for $1,300-1,500 in 1995; 1988 Dodge Ram van purchased for $27; and a 1982 Dodge K-Car purchased for $500. These were purchased prior to the entry of the final divorce decree.
 {¶ 6} Appellee testified that in June 1998, she was working full time for the local newspaper at $10 per hour. She also worked additional hours in the summer of 1998 at a local department store. In 2000, she left the newspaper job and went to work for an insurance company. Appellee stated that she paid for the children's start-up school fees and supplies, as well as some piano and dance lessons throughout the entire year. She acknowledged that she never asked appellant to help pay for these items, but that he did pay for several dance costumes. As part of her share of the marital property division, appellee had received the marital home and its equity. Although only $30,000 was owed at the time of the divorce, appellee subsequently refinanced the home. After fighting off foreclosure, appellee ultimately sold the home in 1999 for $115,000, but said she did not receive any funds from the sale and had to pay an additional $1,000 at closing. When asked about what had become of the more than $80,000 in equity, appellee said it went for "everyday living expenses." Appellee also stated that at one point she had purchased a 1996 Saturn automobile, but fell behind in the payments and did not remember what happened to the vehicle.
 {¶ 7} The parties both acknowledged that each had increased expenses, such as utilities, food, and other out-of-pocket expenses when the children were in their homes. Both also noted that there had been no extraordinary medical, dental, or other expenses.
 {¶ 8} After reviewing proposed findings of fact and conclusions of law from each party, the trial court adopted appellee's findings. The court did not credit appellant with any of the health insurance premiums paid. The court further found that because appellant appeared to be in a better financial position than appellee and that appellee had a hard time finding steady employment and had struggled financially after the divorce, it did not see any need to adjust the child support order to reflect the 50/50 time spent in each parent's home. The court concluded that appellant's prior child support obligation of $513.02 per month should remain unchanged.
 {¶ 9} Appellant now appeals from that judgment, setting forth the following four assignments of error:
 {¶ 10} "Assignment of Error No. 1
 {¶ 11} "The trial court abused its discretion and erred as a matter of law, when it did not consider the amount of time the children spent in each parents home, when allocating the guideline amount of child support for the time period of June 17, 1998, through August 24, 2000.
 {¶ 12} "Assignment of Error No. 2
 {¶ 13} "The trial court abused its discretion and erred as a matter of law when it erroneously used the child support computation worksheet set-forth [sic] under ORC 3119.022, (Effective 3-22-2001), instead of the worksheet set-forth [sic] in ORC 3113.215, for the time period of June 17, 1998 through August 24, 2000.
 {¶ 14} "Assignment of Error No. 3
 {¶ 15} "The trial court abused its discretion and committed prejudicial error when it failed to include the cost of providing health insurance for the children in the child support worksheet despite the fact that the cost had already been adopted by the trial court as a finding of fact in its April 6, 1999 judgment entry.
 {¶ 16} "Assignment of Error No. 4
 {¶ 17} "The trial court abused its discretion and committed prejudicial error when it adopted the `Plaintiff's Proposed Findings of Fact and Conclusions of Law' and rendered its decision that is against the manifest weight of the evidence."
 {¶ 18} We are compelled to note that many of the issues now on appeal are partially due to and complicated by the trial court's lengthy delay in carrying out our instructions to review the support order, i.e., conduct a hearing and hear any additional evidence needed to calculate the appropriate amount. Since that hearing was finally held, we will now review the propriety of the court's final determinations.
 I. {¶ 19} We will address appellant's assignments of error out of order. In the second assignment of error, appellant argues that the trial court used the wrong child support worksheet.
 {¶ 20} In 1999, the date of the challenged child support order, the child support worksheet provided in R.C. 3113.215
essentially requests the same information as that found in new section R.C. 3119.022. Although the newer worksheet may be more helpful in calculating deviations in a shared parenting plan, we do not find any major differences which would have affected the calculations in this case. Moreover, the child support amount used and the version of the worksheets used by the trial court for each of the parents comport with the old worksheet and support amounts provided in R.C. 3113.215. Therefore, we find no harmful error in the form of the worksheets utilized by the trial court.
 {¶ 21} Accordingly, appellant's second assignment of error is not well-taken.
 II. {¶ 22} In his third assignment of error, appellant argues that the trial court erred in failing to credit him for the children's share of the health insurance premiums paid by him.
 {¶ 23} R.C. 3113.215 specifically provided for the deduction of the cost of health insurance premiums. Where the cost of family plan health insurance purchased solely due to the required coverage for the children is more than the cost of a single policy, the increased cost should be credited against the payor's income as provided for on the child support worksheet. SeeHowell v. Pennybaker, 6th Dist. No. H-01-049, 2002-Ohio-2362, at ¶ 10.
 {¶ 24} In this case, the trial court did not credit appellant for the cost of health insurance paid in calculating the child support owed.[1] While pointing out the correct line for giving the credit, the trial court then refused to make the adjustment. The trial court stated that the "previously calculated child support, through line 24, for the relevant time period and this calculation has been upheld by the Court of Appeals." This statement is both incorrect and inconsistent with its later statement that payment for health insurance was "actually an adjustment to child support (above line 24) and not considered substantial for considering a deviation since no significant medical issues were present." Prior to this appeal, since no worksheet was provided for the initial calculations, we were unable to review the propriety of the child support originally ordered for the June 1998 to August 2000 period. The trial court's "findings" and refusal to give credit for the insurance premiums are representative of its resistance to perform anything but a superficial review of the child support order in this case.
 {¶ 25} Our initial instructions in the first appeal of the 1999 order were that the trial court was to determine why there was a wide discrepancy between the original order and the later recommendation by the magistrate. See Ontko v. Ontko (Nov. 12, 1999), Erie App. No. E-99-040, as modified on reconsideration byOntko v. Ontko (Jan. 6, 2000), Erie App. No. E-99-040. For some unfathomable reason, the court repeatedly refused to fully investigate the reason for this discrepancy. In the ensuing mandates, we concluded that to determine the correct amount of child support, the trial court needed to conduct a hearing, consider whatever relevant evidence the parties presented, and create a child support worksheet that reflected the court's findings. As part of that inquiry, the cost of insurance premiums would have been relevant, especially since the magistrate's worksheet included them. The record reveals that, at the most recent hearing regarding the relevant time period, appellant did provide information that demonstrates that the additional cost for his children's health insurance is $84.39 per month, or $1,012.68 per year. Appellee had no corresponding payments for health insurance. Since the worksheet provides for such an adjustment to income prior to any deviation considerations, we conclude that the trial court erred in failing to credit appellant for the additional amount paid for health insurance.
 {¶ 26} Accordingly, appellant's third assignment of error is well-taken.
 III. {¶ 27} In his first assignment of error, appellant asserts that the trial court erred in failing to give him credit for the time the children spend in his home.
 {¶ 28} Generally, a trial court's determinations regarding a deviation from the child support worksheet amount will not be disturbed absent an abuse of discretion. See Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. The factual findings of the trial court, however, must be supported by "some competent and credible evidence." See Wisintainer v. Elcen Power Strut Co. (1993),67 Ohio St.3d 352, 355; Masitto v. Masitto (1986),22 Ohio St.3d 63, 66. At the time of the 1998-1999 child support determination in this case, however, R.C. 3113.215(B) was the relevant statutory provision and did not provide for an automatic credit in child support obligations under a shared parenting order. SeePauly v. Pauly (1997), 80 Ohio St.3d 386, syllabus. Nevertheless, a trial court may deviate from the child support worksheet calculation, if the "support would be unjust or inappropriate to the children or either parent and would be in the best interest of the child." (Emphasis added.) Id. Consequently, under a shared parenting plan, a trial court does not abuse its discretion by deviating from the guidelines when it calculates child support by equitably giving parents credit for the time they have physical custody of the child. Zeefe v.Zeefe (1998), 125 Ohio App.3d 600, 610, citing Eickelberger v.Eickelberger (1994), 93 Ohio App.3d 221; Cox v. Cox (Apr. 8, 1997), Franklin App. No. 96APF07-889 and 96APF08-990. See, also,Copas v. Copas, 4th Dist. No. 02CA754, 2003-Ohio-3473, ¶ 9;Fernback v. Fernback (Dec. 14, 2001), Mahoning App. No. 00-CA-276; Anthony v. Anthony (Dec. 3, 1999), Lake App. No. 98-L-222.
 {¶ 29} In a traditional child support setting, where one parent has full legal custody, the custodial parent does not pay child support and his or her portion is not offset against the non-custodial parent's support owed. See Fernback, supra. Rather, the custodial parent's share of child support is presumed to be spent on the children since they live primarily with that parent. However, in a shared parenting situation, the parties do not automatically receive that "presumed" credit when the children are with them. Pauly, supra. We recognize that in some shared parenting plans it may be difficult or undesirable to give credit to the parties for "presumed" child support where the time between households is intermingled on an uneven daily or weekly basis. In our view, however, where the parties have specific time periods, with each becoming the residential parent for one half the time, such "presumed" credit should be given, unless it would be inappropriate or unfair to do so. See, for example, Pace v.Granecki (July 2, 1998), Wood App. No. WD-97-053 (wide disparity of incomes between the parties justified denial of credit to father for time spent with him under shared parenting plan where mother earned $13,000 yearly income as a church secretary and father earned $130,000 yearly as a pediatric dentist)
 {¶ 30} In this case, as the trial court correctly noted, both parties had "imputed income" for the purposes of calculating support for this period. Appellee's imputed income of $20,800, however, was based upon her newly attained $10 per hour job. In reality, while employed at the newspaper, appellee actually made between approximately $22,000 and $25,000 per year. Appellant's imputed income of $49,000, on the other hand, is based upon actual income of $28,000. Thus, while properly used in calculating the initial child support amounts, appellant is already starting at a financial disadvantage.
 {¶ 31} Nonetheless, the court determined that appellant should not get the implied credit for the time the children spend in his household. In support of that determination, the trial court stated that appellee "has struggled financially since the parties' divorce * * * fought off foreclosure of her home and ultimately sold the home and moved to a rented apartment. * * * She further related that there were extraordinary financial obligations for the children for dance lessons, cheerleading, school activity fees and athletic expenses
 {¶ 32} * * and are found to be substantial. What the Court also found significant was there was no evidence presented that [appellee's] financial struggles were related to financial mismanagement. The evidence was clear that she was uneducated and had problems finding steady employment. Further, the evidence indicated that she provided for the children and even found a way to provide for the lessons, equipment and fees to her own financial detriment."
 {¶ 33} We have reviewed the transcript of the hearing conducted before the trial court and simply do not find any support for the trial court's findings. First, no exact amount was provided as to how much appellee actually spent on school fees and supplies or when, how much, or how often, she paid for piano lessons or dance classes. At most, she stated that school fees ran "forty to a hundred something" and every year it was different. For the relevant time period, only two school years' start up costs are involved. We also cannot find any reference to appellee's actual payment for cheerleading or athletics expenses. In fact, appellee specifically answered that the children did not have any extraordinary "sports expenses."
 {¶ 34} Moreover, the children's school expenses came at a time immediately following the period when the children were with appellant and appellee's living costs would have been less. While we do not disagree that the school fees would have added temporarily to appellee's expenses, such costs are normal and expected when raising children. In addition, appellee still received child support for the six months the children were not with her. In our view, since no specific amounts were provided, there is no evidence from the record to support the trial court's findings regarding appellee's "extraordinary" expenses or that they were "substantial."
 {¶ 35} We are also extremely puzzled by the trial court's findings regarding appellee's finances, education, and employment opportunities. For the relevant time period, appellee had a full-time $10 per hour job at a newspaper which she left in 2000, presumably for a better opportunity with American Family Insurance Company. This would indicate that appellee did not have difficulty finding employment. She also said she had begun college classes in 1996 and received grant funding and student loans which she used for living expenses, which she continued to do through 2000. Although appellee may not have had a college degree, nothing in the record shows that she was "uneducated" or incapable of finding steady employment during the relevant time period. We also conclude that the fact that appellee moved from a house she was trying to purchase to a "rented apartment" does not demonstrate an inability to provide housing for the children. It simply represents that appellee moved to more affordable housing based upon her financial habits.
 {¶ 36} In addition, we find no support for the trial court's determination that there was no evidence of appellee's financial mismanagement. At the time of the divorce, appellee was awarded the marital home, which three years later was sold with equity of more than $80,000. Appellee stated that after the divorce, she had refinanced the house, and, thus, presumably accessed this cash reserve between 1996 and 1999. Considering her testimony in its entirety, during the relevant time period, appellee had income from the newspaper, the extra department store job, the cash from the refinancing, and student loan funds. Appellee's explanation for her poor financial condition is simply not reasonable, especially in light of the infusion of $80,000 into her income over the three years after the divorce. At best, nothing in the record adequately explains the depletion of those funds. At worst, it can be inferred that appellee simply spent money on things other than her mortgage and bills. Appellee said that after the divorce and prior to the relevant time period, she got behind in her bills and did not make much since she was self-employed. Nevertheless, for the relevant time period, the trial court imputed income to her of $20,800, which remained unchanged after the hearing.
 {¶ 37} What the record does show is that, as in most cases, both parties had some financial struggles after the divorce. Just as appellee claims to have used her marital home equity fund, appellant testified that in order to keep up with the children's needs and his bills, he has had to use the marital savings awarded to him in the divorce, as well as the retirement fund awarded as part of his buy-out. The boat and old vehicles were irrelevant as property rightfully granted to him as his share of the marital property.
 {¶ 38} In our view, the trial court's decision penalized appellant for better financial management and required him to cover any shortfall in appellee's imputed income or dissipation of the $80,000. Although appellee may now be having problems earning the amount imputed to her, it is not the function of a child support order to deplete one parent's assets in order to subsidize another parent's underemployment, unemployment, or post-divorce mismanagement of assets.
 {¶ 39} Therefore, in consideration that the child support in this case is based upon appellant's imputed income which was more than his actual income, that for the relevant time period appellee's actual income was higher than her imputed income, that both parties provide for extra expenses of the children, and that appellant had at least one of the children more than 50 percent of the time, we conclude that the trial court abused its discretion in failing to give credit for the time the children were with each parent.
 {¶ 40} Accordingly, appellant's first assignment of error is well-taken.
 IV. {¶ 41} Appellant, in his fourth assignment of error, argues that the trial court erred in adopting the plaintiff's findings of fact and conclusions of law, and its decision was against the manifest weight of the evidence. What appellant is essentially arguing is that the trial court's factual findings were not supported by the record, thus resulting in an incorrect decision. In light of our disposition of the first and third assignments of error, we agree. Accordingly, appellant's fourth assignment of error is well-taken.
 {¶ 42} To avoid further delay in this case, pursuant to App.R. 12(B), we modify the trial court's judgment entry and child support work sheet as follows:
 {¶ 43} "It is therefore ORDERED that Defendant shall pay to Plaintiff child support for the period of June 17, 1998 to August 24, 2000 in the amount of $209.28 per month plus administrative fees for a total obligation of $213.48 per month. Erie County CSEA shall adjust its records accordingly. Costs are taxed equally between the parties."
 {¶ 44} Child Support Worksheet

 "Column I Column II
 FATHER MOTHER
"* * *
"14 AGI 48,510.00 20,592.00
"15 Combined income 69,102.00
"16 Percentage 70.20% 29.80%
"17 Basic obligation 14,939.47
"18 Obligation/parent 10,487.51 4,451.96
"* * *
"20 Health insurance 1,012.68 0
"* * *
"22 Obligation w/adj 9,474.83 4,451.96
"22a Obligor 5,022.87 (after offset)
 0
" * * *
"24b Deviation share 2,511.43 (50%) 0
"25 Final figure 2,511.44 0
"* * *
 Per Week Per Month
"Father Per Child Total Per Child
 Total
 "Child Support Obligation 16.10 48.30 69.76
 209.28
 "Processing Charges .32 .96 1.40
 4.20
 "Total 16.42 49.26 71.16
 213.48"
 {¶ 45} The judgment of the Erie County Court of Common Pleas, Domestic Relations Division is reversed and modified as referenced in this decision. Court costs of this appeal are assessed to appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J., concur.
[1] Subsequent to the myriads of proceedings related to the June 1998 to August 2000 order, child support was changed once again. In the appeal of that more recent order, we determined that the information provided to the trial court regarding insurance premiums for the time after August 2000 was incomplete. See Ontko v. Ontko (Feb. 8, 2002), Erie App. No. E-01-030. The trial court may be confusing this more recent decision with the issues surrounding the June 1998 to August 2000 order. The only amount considered by us to be correct for the pre-August 2000 time period was the lower amount calculated by the magistrate's worksheet — which inexplicably differed from the initial order and was the very reason for our remand to the trial court. Had the trial court conducted the mandated hearing in a timely manner, this confusion could have been eliminated.