[Cite as *Turner v. Robinson*, 2016-Ohio-2981.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| PAUL TURNER, | : | |
| Plaintiff-Appellant, | : | Case No. 15CA11 |
| v. | : | DECISION AND JUDGMENT ENTRY |
| DALE ROBINSON, ET AL., | : | |
| Defendants-Appellees. | : | RELEASED: 05/09/2016 |

APPEARANCES:

David E. Stenson, Dayton, Ohio for appellant.

Justin T. Gray, Wilmington, Ohio for appellees.

Hoover, J.

{¶ 1} Plaintiff-appellant Paul Turner ("Turner") appeals a decision and judgment entry from the Highland County Common Pleas Court awarding title by adverse possession to land contained within property known as the Gist Settlement. Turner brought an adverse possession action to quiet title to various lots of property within the Gist Settlement. Defendants-appellees David Robinson, Dale Robinson, and Bonnie Robinson answered Turner's complaint and asserted their own adverse possession claims to two lots of property, numbered 21 and 22. The trial court granted title in favor of Turner to numerous lots of property that were not in dispute. However, the trial court awarded title to lots 21 and 22 in favor of David Robinson and Dale Robinson ("Robinsons") as tenants in common.

{¶ 2} Here on appeal, Turner presents five assignments of error, challenging the trial court's June 26, 2015 final judgment entry. As an initial matter though, we find that a

jurisdictional issue exists, barring us from addressing the merits of Turner's appeal. The final

judgment entry states that all claims have been resolved and that there is no just reason for delay.

However, the trial court did not resolve Turner's quiet title claims to lot 2, lot 8, or lot 9. The

trial court also failed to differentiate and otherwise resolve ownership to the southern portion of

lot 22, parcel number 51-05-100-019.00.

{¶ 3} After reviewing the record, we find that the trial court's finding of no just cause for

delay does not support judicial economy at the trial court level and likewise is not supported by

the record. Consequently, we lack jurisdiction to hear this matter. Thus, we hereby dismiss this

appeal.

### I. Facts and Procedural Posture

{¶ 4} Turner initiated this proceeding in December 2013 by filing a complaint to quiet

title to property through adverse possession.[1] The property at issue in this case is known as the

Gist Settlement. Samuel Gist was an English owner of slaves and Virginia land. Gist died in

1815. Gist's will directed that upon his death the following should take place: (1) his slaves were

to be freed and (2) the trustees of his estate were to purchase lands on which the freed slaves

could live. Apparently, the slaves were freed; and the trustees purchased lands in Penn

Township, in Highland County. Taxes on the land, however, went unpaid for several years.

{¶ 5} In 1894, the county treasurer sought recovery of the taxes from the several settlers

of the land in Highland County Common Pleas Court Case No. 5907. In an 1895 order, the trial

court divided the land into 31 lots, determined ownership for each lot, and designated the amount

---

[1] Turner's complaint also asserted a claim that the Robinsons had been negligently allowing illegal dumping on the property titled to Hester Day and that said dumping is illegal and in violation of environmental protection laws. Turner never prosecuted this claim during the proceedings below. This claim is not at issue in this appeal.

of taxes owed on each lot.[2] Since 1895, ownership in some of the lots has been transferred, while ownership in other lots has not.

{¶ 6} Turner is a descendant of the original freed slaves that settled on the lands of the Gist Settlement. Turner was born on the settlement in 1931. At the age of 18, he enlisted in the United States Navy. After discharge from the Navy, Turner returned to the Gist Settlement in 1976. Upon returning to the Gist Settlement, Turner found that a majority of the lots had outstanding back taxes. Turner started paying the taxes on each lot.

{¶ 7} The defendants-appellees in this case are David Robinson, Dale Robinson, and Bonnie Robinson. David Robinson and Dale Robinson are brothers. Bonnie Robinson is married to Dale Robinson. Bonnie Robinson was not awarded title to any of the lots of the Gist Settlement.

{¶ 8} In his complaint, Turner named several defendants, their spouses, and their heirs as record owners of the lots he sought to quiet title. Turner's complaint did not specifically state the lots to which he wanted to quiet title. Instead, Turner attached several papers to his complaint including the 1895 order in Highland County Common Pleas Court Case No. 5907, a map of the original boundaries of the lots in the Gist Settlement, and copies of the post-1895 deeds transferring title to the lots to some of the named defendants. Turner also included in his attachments a handwritten list that provided information on 22 of the 31 lots. In the list, Turner noted the lot number, the parcel number, the owner(s) and the acreage associated with each of

---

[2] The trial court took judicial notice of this case and its final judgment.

the listed lots. The lots listed were lots 1, 2, 3, 4, 5, 8, 9, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 24, 26, 27, 28, and 29.

{¶ 9} In December 2013, Turner filed a motion for service by publication. Turner stated in an affidavit that only five of the named defendants had addresses "capable of service." The trial court granted his motion and directed the clerk to serve the parties by publication.

{¶ 10} In January 2014, the Robinsons filed an answer to Turner's complaint, a counterclaim against Turner, and a cross-claim against all the named defendants in Turner's complaint. In their filings, the Robinsons also demanded legal title to property through adverse possession. Specifically, the Robinsons sought title to lots 21 and 22 of the Gist Settlement. The Robinsons also filed a motion for service by publication in order to serve the named defendants in Turner's complaint, which the trial court granted. The Robinsons did not contest Turner's adverse possession claims as to the other lots of the Gist Settlement.

{¶ 11} In March 2014, Turner filed a motion for default judgment against all the defendants that had failed to answer or otherwise respond to his complaint.

{¶ 12} The only lots that were in dispute between Turner and the Robinsons were lots 21 and 22. In the trial court's final judgment entry that is appealed herein, the trial court stated that Turner and the Robinsons agreed to submit this case for decision to the trial court based upon "stipulations of testimony" and exhibits submitted by the parties. Both Turner and the Robinsons confirm this agreement in their respective appellate briefs. Turner and the Robinsons each filed their own "stipulations of fact," memorandums, supporting affidavits and exhibits. These "stipulations" were not an agreed set of facts between the parties. Instead, both Turner and the Robinsons filed separate sets of facts of which some of the facts were in conflict. Additionally,

Turner and the Robinsons each provided the trial court with different maps displaying the lots of the Gist Settlement and their boundaries.

{¶ 13} Before the commencement of this proceeding, Hester Day was the title owner of lot 21, parcel number 51-05-100-020.00. Lot 21 consists of 3.375 acres.

{¶ 14} As for lot 22, the 1895 order in Highland County Common Pleas Court case number 5907 granted title of lot 22 to Hester Day and Isaac Day. However, Lot 22 consists of two portions of real property, a northern portion and a southern portion. As for the northern portion, the record does not contain any other deed transferring title to anyone else. Therefore, prior to the commencement of this proceeding, Hester Day and Isaac Day remained the record title owners of the northern portion of lot 22, parcel number 51-05-100-021.00. Lot 22, northern portion, consists of 7 acres of land.

{¶ 15} With respect to the southern portion of Lot 22, parcel number 51-05-100-019.00, the record reflects that in 1930, Mary Duckwall was granted title of the southern portion of lot 22. According to the record, Mary Duckwall was the record title owner of the southern portion of lot 22 prior to the filing of this action. Lot 22, southern portion, consists of 3 acres.

{¶ 16} In June 2014, Turner's counsel filed a letter which was addressed to the trial court along with a copy of a map ("Turner's map") of the Gist Settlement. Turner's map contained the name of the Highland County Engineer and displayed the property boundaries of the 31 lots. The lots were labeled by owner(s) and acreage. In the letter, Turner's counsel stated that the properties highlighted in yellow were uncontested properties; and the properties that were not highlighted were the properties included in this action. The highlighted properties are a portion of lot 2, lots 6, 7, 10, 11, 18, a portion of lot 19, lots 23, 25, 30, and 31.

{¶ 17} The Robinsons also filed a map, marked as Defendant's Exhibit A. The Robinsons' map is a satellite photograph, again showing the property boundaries of the 31 lots. The Robinsons' map displayed the parcel number of each lot along with the corresponding owner of record. It is notable that while Turner's map displayed the owner of each portion of each lot; the Robinsons' map in some instances only displayed one owner per lot, regardless if the lot had more than one parcel/owner.

{¶ 18} Upon agreement of the parties, the parties each filed their own set of facts. Turner filed the following pertinent facts:

5. Around the early 1970's Lester Robinson moved his family to Lot 22, which is the Lot previously granted to Hester Day.

7. In 1996 Paul Tuner wrote a letter to Lester Robinson advising him that the property they were staying on is that of his aunt and that they have permission to stay there.

* * *

9. David Robinson was born on the property and has lived there continuously with the exception of a short period of time (less than a month).

10. Dale Robinson also resided on the property however he left for a much longer period of time (over 3 months) to live at another address.

* * *

13. During the course of living on Lot 22 the Robinson family has continued to bring junk items on the property and have made no improvements to the land that weren't already in place.

14. After Lester Robinson passed away and David and Dale became the primary caretakers the land became increasingly misused and hostile actions towards the Plaintiff commenced.

* * *

17. Plaintiff states the Robinsons have not improved lot 21. They have only allowed their horses to graze.

* * *

19. Plaintiff has hay farmed on lot 21 every year since 1976.

{¶ 19} On the other hand, the Robinsons submitted the following pertinent facts:

1. Lester Robinson is the Father of Dale and David Robinson and lived on Lot 22 of the Gist Settlement until he was 84 years old; this lot contains Seven (7) acres. This lot is titled "Hester Day Et Al" in the Highland County Engineer's Report, attached hereto as "Exhibit A." The property comprising Lot 22 is entirely located in Highland County, Ohio.

2. David Robinson has lived on Lot 22 described above since his birth and has continuously, exclusively, open and notoriously used the property comprising Lot 22 for a period of more than 21 years adversely to the rights of the owner of record. [sic]

* * *

4. Lot 21 of the Gist Settlement titled, "Hester Day" on Exhibit A, is directly behind Lot 22 in an Easterly direction and consists of 3.375 acres and this real property is located in Highland County, Ohio.

5. Lester Robinson, while he was living, farmed the land compromising Lot 21 in row crops, made hay and pastured cattle and horses on the same. The area surrounding the lot had been fenced by David Robinson, Lester Robinson's son, over 21 years ago and horses are still pasturing on lot 21 as of the date of the execution of this document. Lot 21 has been used in other manners by David Robinson including hunting and camping for a period more than 21 years.

6. David Robinson has lived on Lot 22 for 47 years and treated the same as his own property, including mowing and general maintenance of the same.

7. David Robinson has farmed and otherwise used the real property comprising Lot 21 as his own of a period longer than 21 years, including, but not limited to pasturing his horses. See Exhibits B-H.

8. David Robinson bought his own mobile home and moved in right next to his father, Lester Robinson, in 1989. This mobile home was installed on Lot 22.

9. David Robinson fenced the entirety of Lot 21 for the purpose of using the ground for his own personal use for farming and otherwise; this fence was installed more than 21 years ago and materials for the installation of the fence were purchased by David Robinson.

10. David Robinson continues to live on Lot 22 and use the property comprising Lot 21 to the date of execution of this document.

11. Dale Robinson lives on Lot 22 right next to his brother, David, and has lived on this property since his birth, with the exception of briefly moving away in calendar years 2005 through 2006.

* * *

14. Dale and/or David Robinson have paid the real estate taxes for lots 21 and 22 since 2005.

{¶ 20} David Robinson filed a supplement to the Robinsons' set of facts, which stated, "Paul Turner has never used Lot 21 for farming and/or any other purpose while I have lived on Lot 22 and it is untrue when he states through his Attorney that he has 'hay farmed Lot 21 since 1976.' I have farmed Lot 21 for hay and pasture for my horses and cattle for the time frame stated in my earlier-filed stipulation of facts."

{¶ 21} Turner and the Robinsons each filed a memorandum in support of their claims of adverse possession of lots 21 and 22. In his memorandum, Turner argued that the Robinsons could not meet their burden of proof that they adversely possessed lots 21 and 22 for a period of 21 years. Ironically, Turner stated in his memorandum that he also could not meet the requisite elements to support an adverse possession claim. Turner stated that he did have "probate law to support his claim" because he is a direct descendant of Hester Day. Turner claimed to be Hester Day's nephew. Turner requested that the court dismiss both parties' claims of adverse possession and allow him to properly pursue his claim through probate.

{¶ 22} In their memorandum in support of their claim of adverse possession, the Robinsons argued that they have adversely possessed lots 21 and 22 for more than the requisite 21-year period. The Robinsons contended that the trial court should vest legal title to lots 21 and 22 in the names of David Robinson and Dale Robinson, or in the alternative only in David Robinson's name as he intends to divide title equally with his bother Dale Robinson.

{¶ 23} On June 26 2015, the trial court issued its final judgment entry, which included findings of fact and conclusions of law. In its entry, the trial court stated, "All other defendants [except for the Robinsons] are in default for failure to file a responsive pleading." The trial court

found that Turner had established by clear and convincing evidence the elements of adverse possession for the following lots: 1, 3, 4, 5, 12, 13, 14, 15, 16, 17, two portions of lot 19, lots 20, 24, 26, 27, 28, and 29. The trial court awarded title to those lots of the Gist Settlement in favor of Turner.

{¶ 24} However, the trial court ruled that David Robinson and Dale Robinson were entitled to judgment vesting them title to lots 21 and 22 as tenants in common because they had proven all the elements of adverse possession by clear and convincing evidence. The trial court also made three other conclusions of law, (1) the possession of David Robinson and Dale Robinson of lots 21 and 22 since 1999 must be tacked onto the period of possession by their father Lester Robinson since the 1970s; (2) The letter from Turner to Lester Robinson granting permission to use the property was of no legal consequence because Turner had no ownership rights in the property at the time of delivery of the letter; (3) Turner's second claim for alleged unlawful dumping does not state a claim for relief because, as a matter of law, violation of statutes or administrative regulations do not grant a private cause of action to an adjoining landowner.

{¶ 25} Turner then filed this timely appeal.

## II. Assignments of Error

{¶ 26} Turner presents the following five assignments of error for our review:

First Assignment of Error:

> THE TRIAL COURT ERRED IN FAILING TO TRANSFER LOT 2 - PARCEL 51-05-100-029.00; LOT 8 - PARCEL 51-05-100.038.00; AND LOT 9 - PARCEL 51-05-100-039.00.

Second Assignment or Error:

THE TRIAL COURT ERRED IN FAILING TO FIND THAT LOT 22 (MARY

DUCKWALL PROPERTY) HAS BEEN WORKED CONTINUOUSLY BY

PAUL TURNER FOR THE PAST 21 YEARS AND THAT THE ROBINSON'S

[sic] HAVE NOT WORKED THE LAND.

Third Assignment of Error:

THE TRIAL COURT ERRED IN FAILING TO FIND THAT PAUL TURNER,

IN 1995, GAVE HIS PERMISSION FOR THE ROBINSONS TO STAY ON

THE PROPERTY THAT THEY PRESENTLY OCCUPY, WHICH BLOCKS

THEIR CLAIM OF ADVERSE POSSESSION.

Fourth Assignment of Error:

THE TRIAL COURT ERRED IN GRANTING ADVERSE POSSESSION OF

PROPERTY TO THE ROBINSONS WHEN THEY DID NOT USE THE

PROPERTY FOR ITS INTENDED USE, WHICH WAS FARMING.

Fifth Assignment of Error:

THE TRIAL COURT ERRED IN GRANTING ADVERSE POSSESSION OF

PROPERTY TO THE ROBINSONS AFTER DALE ROBINSON MOVED

FROM THE PROPERTY FOR A PERIOD OF 3 YEARS, THEREBY

BREAKING HIS CLAIM FOR ADVERSE POSSESSION.

### III. Jurisdictional Issue- Lack of Final Appealable Order

{¶ 27} Before we address the merits of the appeal, we must decide whether we have jurisdiction to do so. Appellate courts "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]" Section 3(B)(2), Article IV, Ohio Constitution; *see*

*also* R.C. 2505.03(A). If a court's order is not final and appealable, we have no jurisdiction to review the matter and must dismiss the appeal. *Eddie v. Saunders*, 4th Dist. No. 07CA7, 2008-Ohio-4755, ¶ 11. Here, we raise the jurisdictional question, sua sponte.

{¶ 28} An order must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B), if applicable, to constitute a final, appealable order. *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989). Under R.C. 2505.02(B)(1), an order is a final order if it "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" To determine the action and prevent a judgment for the party appealing, the order "must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989).

{¶ 29} Additionally, if the case involves multiple parties or multiple claims, the court's order must meet the requirements of Civ.R. 54(B) to qualify as a final, appealable order. Under Civ.R. 54(B), "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Absent the mandatory language that "there is no just reason for delay," an order that does not dispose of all claims is subject to modification and is not final and appealable. *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989); *see* Civ.R. 54(B). The purpose of Civ.R. 54(B) is " 'to make a reasonable accommodation of the policy against piecemeal appeals with the possible injustice sometimes created by the delay of appeals[,]' as well as to insure that parties to such actions may

know when an order or decree has become final for purposes of appeal." *Pokorny v. Tilby Dev. Co.*, 52 Ohio St.2d 183, 186, 370 N.E.2d 738 (1977) (citations omitted).

{¶ 30} This court has previously stated:

The [Ohio Supreme Court in *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 617 N.E.2d 1136] ruled that a Civ.R. 54(B) finding is, in essence, a factual determination on whether an interlocutory appeal is consistent with interests of justice. *Id.* at paragraph one of the syllabus. The Ohio Supreme Court further stated that trial courts enjoy the same presumption of correctness with regard to this finding that they enjoy with any other factual findings and that such a finding "must stand" if the record indicates the interests of sound judicial administration will be served by a finding of "no just reason for delay." *Id.* at 355, 617 N.E.2d 1136 and at paragraph two of the syllabus.

We recognize that *Wisintainer* sets forth a deferential standard and we are generally reluctant to strike a Civ.R. 54(B) certification. *See Oakley v. Citizens Bank of Logan*, Athens App. No. 04CA25, 2004-Ohio-6824, at ¶¶ 11; *Bell Drilling & Producing Co., v. Kilbarger Construction, Inc.* (Jun. 26, 1997), Hocking App. No. 96CA23. However, when a Civ.R. 54(B) certification does not serve the interests of judicial economy, we will strike it. *See e.g. Oakley*, supra at ¶¶ 11-13; *Portco, Inc. v. Eye Specialists, Inc.*, Scioto App. No. 06CA3127, 2007-Ohio-4403, at ¶¶ 10-11.

*Penn v. Esham*, 4th Dist. Scioto No. 07CA3170, 2008-Ohio-434, ¶¶ 12-13.

{¶ 31} In the case sub judice, the trial court's June 26, 2015 judgment entry states, "The Court finds that all claims raised in the pleadings in this case have been resolved and that this is a

final appealable order. The Court finds that there is no just cause for delay." After a review of the record before us, we find that the evidence does not support the trial court's finding.

{¶ 32} Turner stated in his complaint, that he is "* * *adversely possessing the properties located in the GIST SETTLEMENT, * * *and more fully described in Exhibit A attached to this Complaint[.]" Turner named numerous defendants, including WM. McKinley Rollins, Spouse of WM. McKinley Rollins, Next of Kin/Heirs of WM. McKinley Rollins, Caroline Rollins, Spouse of Caroline Rollins, Next of Kin/Heirs of Caroline Rollins, Elizabeth Lawson, Spouse of Elizabeth Lawson, Next of Kin/Heirs of Elizabeth Lawson. The complaint stated:

WHEREFORE, Plaintiff Paul Turner demands judgment as follows:

A. That the title to the properties be found to be Plaintiff's;

B. That Plaintiff's title to the properties be quieted as against all Defendants;

C. That the Defendant be required to set up their interests or be forever barred;

* * *

{¶ 33} Turner attached a list of lots and their corresponding owners to his complaint. In the list, William McKinley Rollins is listed as the owner of lot 2, parcel number 51-05-100-029.00 consisting of 3.856 acres. Caroline Rollins is listed as the owner of lot 8, parcel number 51-05-100-038.00 consisting of 7.500 acres. For lot 9, Turner listed two parcels and two owners. Sam Turner is listed as the owner of 51-05-100-040.00 consisting of 1.375 acres and "Elizabeth Lawson (Eliza Lawson)" is listed as owner of parcel number 51-05-100-039.00 consisting of 4.125 acres.

{¶ 34} In its final judgment entry, the trial court ordered title to lots 1, 3, 4, 5, 12, 13, 14, 15, 16, 17, two parts of lot 19, lots 20, 24, 26, 27, 28, and 29 quieted in favor of Turner. The trial court did not reference lots 2, 8, or 9 in its final judgment entry.

{¶ 35} The other lots not mentioned or referenced to by the trial court (6, 7, 10, 11, 18, 19, 23, 25, 30, and 31) had listed owners not named in Turner's complaint and were highlighted on Turner's map. As previously stated, Turner indicated that the highlighted properties were not at issue in the case; thus he did not seek title to those lots. For example, Elsie Rankin, the labeled owner of the highlighted portion of lot 2, lots 11, 18, and one portion of lot 19 was not named in Turner's complaint. The same is true for Joyzell Friason, the labeled owner of Lots 6 and 7. Therefore, we find that it is clear why Turner was not granted title to those lots. However, it is unclear either by reviewing the trial court's final judgment entry or the evidence contained in the record, why the trial court did not address the ownership of the non-highlighted portion of lot 2, lot 8, or lot 9.

{¶ 36} Also in conflict is the fact that the trial court awarded title of lot 14 to Turner. Caroline Rollins, the owner of lot 8, was also the owner of lot 14. Nothing in the record suggests that Turner's adverse possession claims for the lots for which he was granted title were any stronger or different than his claims for title to the non-highlighted portion of lot 2, lot 8, and lot 9. Yet, the trial court made the following finding of fact, "Plaintiff has established by clear and convincing evidence that he has exclusively possessed openly, notoriously and adversely for over twenty-one years Lots 1, 3, 4, 5, 12, 13,14, 15, 16, 17, two parts of 19, 20, 24, 26, 27, 28, and 29 of the Gist Settlement." The same evidence the trial court relied upon to find that Turner adversely possessed those lots is the same that could be relied upon to find that Turner adversely possessed the non-highlighted portion of lot 2, lot 8, and lot 9. Furthermore, The trial court stated that all defendants except David Robinson and Dale Robinson were in default for failure to file a responsive pleading. The trial court also stated, "Plaintiff did farm all lots in question except for Lots 21 and 22 since 1976."

{¶ 37} In its final judgment entry, the trial court also never referenced the southern portion of lot 22. In its findings of fact, the trial court stated that lots 21 and 22 are owned by Hester Day, but the record is clear that Mary Duckwall owned the southern portion of lot 22 consisting of 3 acres. Without differentiating between the northern or southern portions of lot 22, the trial court granted title to lot 22, in its entirety, to David Robinson and Dale Robinson.

{¶ 38} Based on the foregoing, the trial court's finding of no just cause for delay does not support judicial economy at the trial court level and likewise is not supported by the record. Judicial economy will not be served where this court might consider this case numerous times. Further, issues remain unresolved by the trial court. The trial court did not resolve ownership of lot 2, lot 8, lot 9, or the southern portion of lot 22. For those reasons, we find that no final, appealable order was issued in this case; and we lack jurisdiction to consider the matter. Accordingly, we hereby dismiss this appeal.

APPEAL DISMISSED.

## **JUDGMENT ENTRY**

It is ordered that the appeal is DISMISSED. Appellant and Appellees shall equally divide the costs herein taxed.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court


BY:  _____
            Marie Hoover, Judge



**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**