[Cite as *State ex rel. Governing Bd. of Warren Cty. Edn. Serv. Ctr. v. Ohio Dept. of Edn. & Workforce*, 2024-Ohio-6061.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE EX REL. GOVERNING BOARD OF WARREN COUNTY EDUCATIONAL SERVICE CENTER, et al., | : | CASE NO. CA2024-06-038 |
| | : | |
| Appellees, | : | O P I N I O N<br>12/30/2024 |
| | : | |
| - vs - | : | |
| | : | |
| OHIO DEPARTMENT OF EDUCATION AND WORKFORCE, et al., | : | |
| | : | |
| Appellants. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CV97061

Ennis Britton Co. LPA, and Gary T. Stedronsky and Ryan LaFlamme, for appellees.

Keating Muething & Klekamp PLL, and Bryce J. Yoder; and Dave Yost, Ohio Attorney General, and Ashley A. Barbone, Assistant Attorney General, for appellants.

**M. POWELL, J.**

{¶ 1} Appellants, the Ohio Department of Education and Workforce ("DEW"),

Stephen D. Dackin, and Jo Hannah Ward, appeal the decision of the Warren County

Court of Common Pleas overruling their objections and adopting the magistrate's decision denying DEW's motion to dismiss for lack of subject-matter jurisdiction.[1] For the following reasons, we affirm.

### I. Factual and Procedural Background

{¶ 2} DEW oversees Ohio's implementation of the Individuals with Disabilities in Education Act ("IDEA"), a federal law that entitles children with disabilities to a free appropriate public education ("FAPE"). The Warren County Educational Service Center ("WCESC") is a public agency under the IDEA. Although R.C. 3323.08 places responsibility upon city, exempted village, and local school districts to provide FAPE to children with disabilities, WCESC is involved in the education of children with disabilities pursuant to contract with the aforesaid school districts. R.C. 3313.843(B). City, exempted village, and local school districts as public school districts are included within the definition of Local Educational Agencies or "LEAs" under the IDEA.

{¶ 3} In May 2022, Disability Rights Ohio ("DRO") filed a state complaint with DEW alleging systemic violations of the IDEA against WCESC and its associated LEAs. DEW investigated the allegations and issued Letters of Findings and corrective action to WCESC and the LEAs. In response, WCESC filed a verified complaint on February 20, 2024, seeking declaratory and injunctive relief and a writ of mandamus. The essence of WCESC's complaint was that the complaint procedure of Adm.Code 3301-51-05(K)(5) and (6) applied to a disabled child's "school district of residence," that WCESC is not a "school district of residence" and therefore, DEW lacked legal authority to receive the DRO's complaint against it, investigate the complaint, or issue corrective action against

---

1. Stephen D. Dackin is the Director of the Ohio Department of Education and Workforce, and Jo Hannah Ward is the Director of the Office for Exceptional Children at the Ohio Department of Education and Workforce.

WCESC.

**{¶ 4}** On March 6, 2024, DEW filed a motion to dismiss WCESC's complaint pursuant to Civ.R. 12(B)(1) and Civ.R.12(B)(6). In its Civ.R.12(B)(1) motion to dismiss, DEW asserted that the trial court lacked subject-matter jurisdiction over WCESC's complaint because Adm.Code 3301-51-05(K)(5) and (6) conflict with the IDEA and, therefore, are preempted by federal law. The specific conflict advanced by DEW was that the IDEA complaint procedure applied to any "public agency, while Adm.Code 3301-51-05(K)(5) and (6) is more circumscribed by applying only to a disabled child's 'school district of residence.'"

**{¶ 5}** On April 2, 2024, the trial court's magistrate issued a decision denying DEW's Civ.R. 12(B)(1) motion to dismiss for lack of jurisdiction. The magistrate observed that the IDEA complaint procedures set forth in 34 C.F.R. 300.152 and 34 C.F.R. 300.153 and those set forth by Adm.Code 3301-51-05(K)(5) and (6), are "virtually identical" with the exception that the C.F.R. uses the term "public agency" while the Adm.Code uses the term "school district of residence." The magistrate found that there was no federal preemption because there was no conflict between the C.F.R. and Adm.Code in the IDEA complaint procedure.

**{¶ 6}** On April 16, 2024, DEW filed objections to the April 2, 2024 magistrate's decision denying its Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. On May 23, 2024, the trial court overruled DEW's objections.[2] The trial court approved the magistrate's determination that there was no federal preemption because there was no conflict between the federal and state administrative codes in the IDEA

---

2. The trial court's decision refers to a magistrate's decision of April 17, 2024 (which addressed an issue unrelated to DEW's motion to dismiss), nevertheless the trial court's decision addresses the magistrate's April 2, 2024 decision.

complaint procedure. The trial court held

> [E]ven though the IDEA uses "public agency" and the Adm.Code uses "school district of residence" it is not an actual conflict because it provides the same protection and serves the same purpose. The Adm.Code provides children with disabilities and their parents an avenue to file a Complaint directly with the agency that is obligated to provide FAPE. Therefore, since there is no actual conflict between the Adm.Code, and IDEA, the Court finds that 3301-51-05 is not preempted by the IDEA. Additionally, Plaintiff's Complaint is seeking declaratory judgment of Ohio's minimum state complaint procedures found at Adm.Code 3301-51-05(K)(5) and (6).

**{¶ 7}** The trial court's decision concluded by providing, "[t]here is no just reason for delay."

**{¶ 8}** DEW now appeals the trial court's May 23, 2024 decision, raising one assignment of error for our review.

## II. Legal Analysis

### Final Appealable Order

**{¶ 9}** Before addressing the merits of DEW's assignment of error we must first determine whether the trial court's May 23, 2024 decision is a final appealable order. WCESC asserts that it is not, arguing that it does not fall into any of the categories of final order defined by R.C. 2505.02(B). We disagree with WCESC.

**{¶ 10}** A final appealable order is a jurisdictional requisite of appellate review. "It is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction." *Anglin v. Donohoo*, 2018-Ohio-4484, ¶ 12 (12th Dist.), citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989).

**{¶ 11}** "Generally, an order denying a motion to dismiss is not a final order." *Polikoff v. Adam*, 67 Ohio St.3d 100, 103 (1993). This general rule applies when the

- 4 -

motion to dismiss challenges the trial court's jurisdiction. *See U.S. Bank, N.A. v. Courthouse Crossing Acquisitions, LLC*, 2017-Ohio-9232, ¶ 12 (2d Dist.). The addition of Civ.R. 54(B) language does not change this general rule, i.e. "[t]here is no just reason for delay." In this regard, the supreme court has observed that

> An appellate court's review of a trial court's grant of certification should be a two-step process. First, the focus of the appellate court's review should be on whether the order appealed is "final" as defined by R.C. 2505.02. The reviewing court should concentrate on answering that predominantly legal question of whether the order sought to be appealed affects a substantial right and whether it in effect determines an action and prevents a judgment. It is in this first step of the review process that the court of appeals plays its most important role.

> Second, the appellate court should review the trial court's determination, required by Civ.R. 54(B), that "there is no just reason for delay." As this court has held in the past, the phrase "no just reason for delay" is not a mystical incantation which transforms a nonfinal order into a final appealable order. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64. Such language can, however, through Civ.R. 54(B), transform a final order into a final appealable order.

*Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354 (1993); *See also Anglin* at ¶ 16 ("However, 'the mere addition of Civ.R. 54[B] language to what is not a final order does not transform that entry into a final appealable order.'"), quoting *Sason v. Shepherd*, 2008-Ohio-173, ¶ 3 (11th Dist.).

{¶ 12} The first step of the *Wisintainer* test concerns whether the order is a "final order" pursuant to R.C. 2505.02. R.C. 2505.02(B) identifies five classes of "final orders." In its reply brief, DEW asserts that the denial of its motion to dismiss is a final order pursuant to R.C. 2505.02(B)(1), as "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment."

{¶ 13} In *Davis v. Cincinnati Equitable Ins. Co.*, 1991 Ohio App. LEXIS 3789, (10th

Dist. Aug. 8, 1991), the court of appeals held that the denial of a motion to dismiss that was based upon federal preemption affected a substantial right for the purposes of R.C. 2505.02(B)(1). Here, DEW's motion to dismiss for lack of jurisdiction asserted that Adm.Code 3301-51-05(K)(5) and (6) is preempted by federal law. In this instance, the trial court's denial of DEW's motion to dismiss affected DEW's substantial rights. WCESC does not assert the contrary and only argues that the denial of DEW's motion to dismiss did not determine the action and prevent judgment.

{¶ 14} In *Natl. City Commer. Capital Corp. v. AAAA at Your Serv., Inc.*, 2007-Ohio-2942, the Supreme Court expounded on the meaning of R.C. 2505.02(B)(1) and held "[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." *Id.* at ¶ 7, citing *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 153. DEW argues that the trial court's denial of its motion to dismiss, upon finding federal preemption inapplicable, practically determines the action and prevents a judgment in its favor. Considering this argument requires reference to the IDEA and Adm.Code definitions of the various entities involved in the litigation.

{¶ 15} Pursuant to 34 C.F.R. 300.12, an "educational service agency" (ESA) is defined by regulation as

> (a) A regional public multiservice agency —
>
> (1) Authorized by State law to develop, manage, and provide services or programs to LEAs;
>
> (2) Recognized as an administrative agency for purposes of the provision of special education and related services provided within public elementary schools and secondary schools of the State;
>
> (b) Includes any other public institution or agency having

administrative control and direction over a public elementary school or secondary school; and

(c) Includes entities that meet the definition of intermediate educational unit in section 602(23) of the Act as in effect prior to June 4, 1997.

WCESC is an ESA.

**{¶ 16}** Pursuant to 34 C.F.R. 300.28(a), a "local educational agency" (LEA) is a

public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary or secondary schools in a city, county, township, school district or other political subdivision of a State, or for a combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

Under 34 C.F.R. 300.28(b)(1), an ESA, such as WCESC, is also considered an LEA.

**{¶ 17}** Adm.Code 3301-51-01(B)(58), defines "school district of residence" as

(a) The school district in which the child's parents reside;

(b) If the child is enrolled in a community school, the community school is considered to be the "school district of residence";

(c) If the school district specified in paragraph (B)(58)(a) or (B)(58)(b) of this rule cannot be determined, the last school district in which the child's parents are known to have resided if the parents' whereabouts are unknown;

(d) If the school district specified in paragraph (B)(58)(c) of this rule cannot be determined, the school district determined by the court under section 2151.362 of the Revised Code, or if no district has been so determined, the school district as determined by the probate court of the county in which the child resides.

(e) Notwithstanding paragraphs (B)(58)(a) to (B)(58)(d) of this rule, if a school district is required by section 3313.65 of the Revised Code to pay tuition for a child, that district shall be the child's school district of residence.

Under 34 C.F.R. 300.28(a), a "school district of residence" is also an LEA.

{¶ 18} Pursuant to 34 C.F.R. 300.33 a "Public agency includes the SEA (State Educational Agency), LEAs, ESAs, nonprofit public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA, and any other political subdivisions of the State that are responsible for providing education to children with disabilities."  DEW is the SEA  for the State of Ohio.  Thus, a "school district of residence," WESC, and DEW are each a "public agency" under 34 C.F.R. 300.33.

{¶ 19} Federal regulation dictates that complaints under the IDEA must include, "[a] statement that a *public agency* has violated a requirement of Part B of the Act or of this part" and state complaint procedures must "provide the *public agency* with the opportunity to respond to the complaint."  (Emphasis added.)  300 C.F.R. 153; 300 C.F.R. 152.  By contrast, Ohio's administrative code specifies that the complaint must include a statement that the "school district of residence has violated a requirement of Part B of the IDEA" and the state procedures must "provide the school district of residence with the opportunity to respond to the complaint."  Thus, WCESC, as an ESA and "public agency" would be subject to the complaint procedure under federal regulations but would not be subject to the complaint procedure under Ohio's regulations because it is not a "school district of residence".  Therefore, DEW argues that due to the differing usage of "public agency" versus "school district of residence," state law conflicts with federal law by not allowing complaints to be filed directly with ESAs such as WCESC.

{¶ 20} In denying DEW's motion to dismiss however, the trial court found that the Ohio Administrative Code's use of "school district of residence" instead of "public agency" in its complaint procedures "does not create an actual conflict between the statutes."  The court reasoned that the code furthers the purpose of the IDEA because the school district is specifically charged with ensuring that children with disabilities receive FAPE, and the code provides parents with an avenue to file complaints directly with the agency

responsible for providing FAPE.

{¶ 21} DEW asserts that we should treat the trial court's denial of its motion to dismiss as a final appealable order because the trial court has essentially ruled that the narrower "school district of residence" used in the Adm.Code applies instead of the broader "public agency" used in the IDEA, and under these rulings DEW cannot prevail in the litigation. We agree with DEW.

{¶ 22} Although the denial of a motion to dismiss would not typically constitute a final appealable order, in the context of this case, the denial of the motion to dismiss practically determines the action and prevents judgment in favor of DEW by holding that Adm.Code 3301-51-05(K)(5) and (6) apply. We therefore proceed to review DEW's assignment of error.

{¶ 23} Assignment of Error:

THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' OBJECTION TO THE MAGISTRATE'S DECISION DENYING APPELLANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION.

{¶ 24} In its sole assignment of error, DEW argues that the trial court should have granted its motion to dismiss for lack of subject-matter jurisdiction because Adm.Code 3301-51-05(K)(5) and (6) are preempted by federal law in 34 C.F.R.300.152 and 300.153. In this regard, we disagree with DEW.

{¶ 25} In its answer brief, WCESC argues that the trial court properly denied the motion to dismiss, regardless of whether federal preemption applies, because the trial court has subject-matter jurisdiction to entertain complaints for declaratory judgment under R.C. Chapter 2721 and petitions for writs of mandamus under R.C. Chapter 2731. WCESC also asserts that Ohio's state courts enjoy concurrent jurisdiction with federal courts to consider issues of federal preemption. We agree with WCESC.

**{¶ 26}** "In the absence of a patent and unambiguous lack of jurisdiction, a court of general subject-matter jurisdiction has the ability to determine the bounds of its own jurisdiction." *Girard v. Youngstown Belt Ry. Co.*, 2012-Ohio-5370, ¶ 16, citing *State ex rel. Enyart v. O'Neill*, 71 Ohio St.3d 655. "In determining the scope of its jurisdiction under a federal statute, a state court of general subject-matter jurisdiction possesses a 'deeply rooted presumption in favor of concurrent' state and federal jurisdiction." *Girard* at ¶ 16, quoting *Mims v. Arrow Fin. Servs., L.L.C.,* 565 U.S. 368, 378 (2012). This presumption can only be overcome if one of three criteria apply: (1) the federal statute expressly vests jurisdiction exclusively in federal courts, (2) the legislative history unmistakably implies that jurisdiction was to be vested exclusively in the federal courts, or (3) state jurisdiction is clearly incompatible with concurrent federal jurisdiction. *Id.*

**{¶ 27}** DEW has not argued that any of these criteria are present in this instance. Clearly, the trial court has subject-matter jurisdiction to entertain WCESC's declaratory judgment and mandamus claims, without regard to whether federal preemption applies. If the IDEA preempts state regulations, the trial court has subject-matter jurisdiction to find so. In turn, if federal preemption applies, then dismissal under Civ.R.12(B)(6) may be appropriate. However, DEW did not assign as error the denial of its Civ.R.12(B)(6) motion to dismiss.

**{¶ 28}** In this sense, the trial court went too far in its May 23, 2024 decision by addressing whether there was a conflict between the Adm.Code and C.F.R. and resolving the merits of that issue by finding that there was no conflict and the Adm.Code applied. Rather, the trial court only needed to rule that it had jurisdiction in the case regardless of whether federal preemption applied. Nevertheless, because the trial court addressed the merits of this conflict issue, we must address the merits in the present appeal.

**Preemption**

**{¶ 29}** The preemption doctrine is rooted in the Supremacy Clause of the Constitution. *Fid. Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 152; *see also* U.S. Const. Art. VI, cl. 2. Preemption can generally occur in three ways: (1) Where Congress has expressly preempted state law, (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or (3) where federal law conflicts with state law. *Wachovia Bank v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005).

**{¶ 30}** DEW argues that federal preemption applies because Adm.Code 3301-51-05(K)(5) and (6) conflicts with 34 C.F.R. 300.152 and 300.153. As discussed above, DEW maintains that under 34 C.F.R. 300.152 and 300.153, DEW may accept and investigate complaints against an ESC (educational service center) and issue corrective action as an ESC is considered an ESA and therefore a "public agency" under the IDEA; but it may not do so under Adm.Code 3301-51-05(K)(5) and (6) because an ESC is not defined as a "child's school district of residence" under Ohio's regulations. In support of its argument that there is a conflict invoking federal preemption, DEW cites several cases in which federal preemption and conflict was found in contexts not involved here.

**{¶ 31}** We find that Ohio's IDEA complaint procedures are not in conflict with federal law. The IDEA, and 34 C.F.R. 300.152 and 300.153, were crafted with general language to accommodate the variations of 50 states' educational systems. This explains the C.F.R.'s use of the broad term "public agency" in the IDEA regulations. This is made evident in 34 C.F.R. 300.151(a), which charges each SEA (DEW in this case) with the responsibility of adopting written procedures complying with 34 C.F.R. 300.153 to resolve complaints.[3] These procedures must provide for the filing of a complaint with the SEA

---

3. We note that because DEW is responsible for promulgating the complaint procedures in Adm.Code 3301-51-05(K)(5) and (6), it is peculiar that it now seeks in this case to nullify its own rules through federal

- 11 -

and "*[a]t the SEA's discretion*, provid[e] for the filing of a complaint with a public agency and the right to have the SEA review the public agency's decision on the complaint." (Emphasis added.) 34 C.F.R. 300.151(a)(1)(i) and (ii). Thus, in Ohio, it is under DEW's discretion whether and how to develop procedures for other public agencies to receive IDEA complaints. In exercise of this discretion, Adm.Code 3301-51-05(K)(5) and (6) require that complaints include a statement that a "child's school district of residence" has violated the IDEA, and that the school district must have the opportunity to respond to the complaint. Pursuant to 34 C.F.R. 151(a)(1)(ii), Ohio is not required to make provisions for directly filing complaints with every public agency that may be involved in a child's education, namely ESCs. As discussed above, a "school district of residence" is a "public agency" under 34 C.F.R. 300.33. Thus, the provision of Adm.Code 3301-51-01(K)(6)(b)(i) that a complaint must allege a violation of the IDEA by "a school district of residence" complies with the provisions of 34 C.F.R. 300.152 and 153(b)(1) that state complaint procedures require a complaint to include an allegation that "a public agency" has violated the IDEA and afford the "public agency" an opportunity to respond to the complaint.

**{¶ 32}** Adm.Code 3301-51-01(A)(2) provides that a child's school district of residence "is responsible, in all instances, for ensuring that the requirements of paragraph (A) of this rule for making FAPE available are met for every eligible child in its jurisdiction, *regardless of whether services are provided by another school district, other educational agency, juvenile justice facility, or other facility, agency, department, or entity . . . .*" (Emphasis added.) Thus, a disabled child's school district of residence has the responsibility of providing FAPE. It may do so directly or by contract with an ESC. Although under Adm.Code 3301-51-05(K)(5) and (6), DEW may not accept and

preemption. If DEW reads its own rules as conflicting with federal law, it would seem more appropriate for DEW to simply promulgate new rules rather than appeal to the judiciary to harmonize state and federal law.

investigate complaints and issue corrective action against an ESC, it retains the authority to do so regarding the child's school district of residence even though the services are being provided by an ESC. If the services provided to a school district of residence by an ESC do not satisfy the requirements of the IDEA, then the school district of residence must resolve the issue with the ESC. As children may be receiving the services remotely from their school district of residence, there are conveniences inherent in the provisions of Adm.Code 3301-51-05(K)(5) and (6), permitting the complaint to be filed against the school district of residence.

{¶ 33} Adm.Code 3301-51-05(K)(5) and (6) do not truncate the IDEA or limit its protections and thus they are not in conflict. The federal regulations are intended to provide flexibility to the states in adopting regulations to implement the IDEA and accommodate the particularities of the state's educational system. The specificity in Ohio's regulations that a "child's school district of residence" is responsible for providing FAPE to children with disabilities and is subject to receiving complaints for IDEA violations reflects that goal. Accordingly, Ohio's regulations are not preempted by federal law.

### III. Conclusion

{¶ 34} We find the trial court did not err in overruling appellants' objections to the magistrate's decision denying appellants' motion to dismiss for lack of jurisdiction. Appellants' assignment of error is overruled.

{¶ 35} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.